## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

DYRONNET KADOR O/B/O HER                         CIVIL ACTION
MINOR CHILD, DYAUGNHA WILLIS

versus
                                                 23-cv-11-SDD-RLB
SHERIFF SIDNEY J. GAUTREAUX, III, ET AL.

### CONSOLIDATED WITH

TRINELLE WILLIS, ET AL.                          CIVIL ACTION

versus

SID GAUTREAUX, ET AL.                            23-cv-50-SDD-RLB

### <u>RULING</u>

This matter comes before the Court on the *Motion to Dismiss*[1] filed by Defendants Sheriff Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"), Deputy Eno Guillot, in his individual capacity ("Deputy Guillot"), and American Alternative Insurance Corporation (collectively, the "Sheriff Defendants" or "Defendants" or "Defendant Officers"). Plaintiff, Dyronnet Kador, on behalf of her minor child, D.W. ("Plaintiff"), filed an *Opposition*,[2] to which the Sheriff Defendants filed a *Reply*.[3] For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

---

[1] Rec. Doc. 22.
[2] Rec. Doc. 46.
[3] Rec. Doc. 53.

I.    **FACTS AND PROCEDURAL BACKGROUND**

Plaintiff filed this lawsuit on behalf of her minor child, D.W., the sole surviving child of Deaughn Willis ("Willis"), who was killed on January 8, 2022, during an altercation with police officers from the East Baton Rouge Sheriff's Office ("EBRSO") and the Baton Rouge Police Department ("BRPD").[4]   The events leading up to Willis's death began on the morning of January 8, 2022, when S.C. received a text message advising that her adult daughter, A.C., had been forcefully taken by Willis's twin brother Keaughn Willis.[5] S.C. subsequently called the 911 Operating System in East Baton Rouge Parish to report this information.[6]   The 911 dispatch relayed the information to three unidentified officers, one of whom responded that A.C. "is a habitual runaway."[7]

Plaintiff's allegations are as follows.   Around 3:30 pm on January 8, 2022, five police officers arrived at Willis's residence in full tactical gear, armed and wearing bulletproof vests.[8]   Officer "Jane Doe" assumed position in front of the apartment door, followed by Deputy Guillot who was armed with a "military-style weapon."[9]   Two additional officers were positioned in the adjacent stairwell, and another officer approached the apartment door from the opposing stairwell.[10]   The officers could not be identified as law enforcement due to their placement outside the view of the door's peephole.[11]

---

[4] Rec. Doc. 46, p. 2.
[5] Rec. Doc. 1, ¶ 18.
[6] *Id.* at ¶ 19.
[7] *Id.* at ¶ 20.
[8] *Id.* at ¶ 24.
[9] *Id.*
[10] *Id.*
[11] *Id.*

Willis's mother, stepfather, and two younger brothers were in the apartment with Willis at the time the officers arrived, but neither Keaughn Willis nor A.C. was there.[12] "Officer Jane Doe loudly and aggressively banged on the front door five times with her fist and forearm, causing the door to bow."[13]  Despite the aggressive knocking, no one in the apartment knew that law enforcement was knocking, and none of the officers identified themselves as such.[14]  Willis's stepfather, Leonard Wilson ("Wilson"), shouted "Who is it?", but the officers responded only with more banging on the door.[15]  Wilson again shouted "Who is it?", which was again met with no response.[16]  Willis approached the door and "cautiously cracked open the door."[17]  Deputy Guillot opened fire and Willis was shot in the shoulder and head.[18]  At no time did law enforcement ever identify themselves; at no time was any occupant of Willis's apartment a threat to the officers.[19] Further, Willis did not commit any criminal act or give the officers probable cause to suspect that a crime had been committed.[20]

A neighbors doorbell security captured video of the incident.[21] The footage shows that Deputy Guillot's view of the door is partially obstructed by Officer Jane Doe.[22]  It also reveals that Deputy Guillot fired his weapon into the residence without knowing who or how many people might be behind the door.  "The apartment door is barely open, but

---

[12] *Id.* at ¶ 25.
[13] *Id.* at ¶ 26.
[14] *Id.* at ¶ 27.
[15] *Id.* at ¶ 28.
[16] *Id.*
[17] *Id.* at ¶ 29.
[18] *Id.*
[19] *Id.* at ¶ 30.
[20] *Id.*
[21] *Id.* at ¶ 31.
[22] *Id.*

nothing beyond the door can be seen."[23]  The bullets fired permeated the door and struck Willis in the shoulder and head.[24]

While Willis was inside the apartment, no reasonable officer could have concluded he posed a threat of harm to any law enforcement officer; further, a reasonable officer would have retreated to assess the situation or attempted to de-escalate a dangerous situation.[25]

On the camera video, shrieks can be heard as the apartment door closes.  Several officers retreat, and an officer running down the stairwell is heard yelling, "shots fired."[26] The officer closest to the door asks Deputy Guillot, "He had a gun?"[27]  After Deputy Guillot answers, Officer Jane Doe asks, "Huh?  He did?"[28]  The only firearms observed on the video were in the hands of officers.[29]

After Willis was shot, Officer Jane Doe ordered the inhabitants of the apartment to come out one by one.[30]  Willis's mother is heard saying "Don't shoot at my family. We didn't do nothing wrong."[31]  Continued screams are heard from within the apartment.[32] While Willis lay bleeding on the floor, the occupants comply with the commands and exit the apartment.[33]  Officer Jane Doe gets confirmation from another officer that he will provide "cover," and she opens the apartment door. The camera video then ends.[34]

---

[23] *Id.* at ¶ 32.
[24] *Id.* at ¶ 33.
[25] *Id.* at ¶ 34.
[26] *Id.* at ¶ 35.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at ¶ 36.
[31] *Id.*
[32] *Id.*
[33] *Id.* at ¶ 37.
[34] *Id.*

Willis lay bleeding from gunshot wounds for over forty-five minutes before he died.[35] His mother, who had nursing experience, attempted to provide emergency medical care to stop him from "bleeding out," but the officers prevented her from doing so and even threatened her with arrest if she got close to Willis.[36]  Willis's mother asked the officers to try to stop Willis's bleeding, but they refused to render any medical care.[37] Rather, they searched the apartment and ignored Willis, who was later pronounced dead at the scene.[38]

Plaintiff alleges that at no time did any occupant of Willis's apartment provoke the officers' conduct on January 8, 2022.[39]  No officer at the scene had probable cause or reasonable suspicion to believe that anyone inside the apartment had committed a crime.[40]  The officers did not have a search warrant or an arrest warrant.[41]  Throughout this encounter, the officers were acting under color of state law and in the course and scope of their employment with the EBRSO and BRPD.[42]

Plaintiff seeks relief under 42 U.S.C. § 1983 for wrongful death and survival damages, contending that Deputy Guillot violated Willis's Fourth and Fourteenth Amendment rights by subjecting him to excessive force, unreasonable seizure, and failing to render medical care. Plaintiff also claims Sheriff Gautreaux is liable for various alleged inadequate policies, negligent hiring, inadequate screening, and for failing to train, supervise, and discipline Deputy Guillot. Plaintiff also asserts several state law claims

---

[35] *Id.* at ¶ 38.
[36] *Id.*
[37] *Id.* at ¶ 40.
[38] *Id.*
[39] *Id.* at ¶ 41.
[40] *Id.*
[41] *Id.*
[42] *Id.* at ¶ 42.

against the Sheriff Defendants, including claims for negligence, assault and battery, abuse of process, vicarious liability, and a violation of Louisiana Constitution Article 1, § 2.  Plaintiff also argues that Willis's rights were clearly established when they were violated by Deputy Guillot.  Plaintiff offers a bevy of jurisprudence establishing that it is objectively unreasonable to use "deadly force without an immediate threat and without a warning when one is feasible."[43] The Sheriff Defendants move to dismiss all claims.

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(6) Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[44] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[45] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[46]

In *Bell Atlantic Corporation v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.[47] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

---

[43] *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 338 (5th Cir. 2020); *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."); *see also Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019); *Brosseau v. Haugen*, 543 U.S. 194, 198-199 (2004); *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015) ("We have explained that 'an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.'") (quoting *Lytle v. Bexar Cnty.*, 560 F.3d 404, 413 (5th Cir. 2009)).

[44] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[45] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[46] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[47] *See* 550 U.S. 544 (2007).

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[48] A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"[49] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged."[50] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[51] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[52] "On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation."[53]

## B.    Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[54] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[55]

---

[48] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).
[49] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted).
[50] *Id*.
[51] *Id*.
[52] *Taha v. William Marsh Rice Univ.*, No. H-11-2060, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[53] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[54] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[55] 42 U.S.C. § 1983.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[56]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[57] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[58]

### C.  Qualified Immunity – Individual Capacity Claims

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[59] In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[60]

When a public official asserts the defense of qualified immunity, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense.[61] To

---

[56] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

[57] *See Blessing v. Freestone,* 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).

[58] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

[59] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[60] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

[61] *Jackson v. Texas*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[62] The court has discretion to decide these prongs in any order.[63]

At the 12(b)(6) stage, the court must determine whether, taking the alleged facts in the light most favorable to the plaintiff, the plaintiff has alleged that the defendant's conduct violated a constitutional right.[64]  In the second step, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[65] If a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident."[66]

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."[67] When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[68] Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate."[69]

---

[62] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)(citing *Aschcroft v. al-Kidd*, 563 U.S. 731, 735 (2001)).
[63] *Jackson*, 959 F.3d at 200.
[64] *Morgan*, 659 F.3d at 384; *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).
[65] *Turner v. Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (alteration in original)).
[66] *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).
[67] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[68] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).
[69] *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074.

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'"[70] The plaintiff must "assert facts which, if true, would overcome the defense of qualified immunity."[71] A "plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[72]

Plaintiff here sued Deputy Guillot in his individual capacity for excessive force, unreasonable seizure, and failure to render medical care in violation of the Fourth and Fourteenth Amendments. Deputy Guillot has asserted the defense of qualified immunity.

### 1.    Excessive Force/Unreasonable Seizure

"The Fourth Amendment guarantees the right to be free from 'unreasonable searches and seizures.'"[73] "Apprehension by the use of deadly force is a seizure."[74] "For the first step" in the qualified immunity analysis, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[75] "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the

---

[70] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).
[71] *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)(*Hicks v. Mississippi State Emp. Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)).
[72] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[73] *Davis v. Romer*, 600 F. App'x 926, 929 (5th Cir. 2015) (quoting U.S. Const. amend. IV).
[74] *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).
[75] *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 336 (5th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

use of excessive force; and (3) that the excessiveness of the force was unreasonable."[76]

Because Willis's "death was an injury caused by the deadly force employed, ... the only issue is whether the use of that deadly force was unreasonable."[77] "To gauge the objective reasonableness of the force, '[the Court] must balance the amount of force used against the need for force.'"[78]

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S. at 8–9, 105 S. Ct. at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").[79]

"That second factor is the most important: [The Court] must determine whether [Decedent] 'posed an immediate threat to the safety of the officers or others.'"[80] "The '[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others.'"[81] In other words, "[t]he use of deadly force may be proper regardless of an officer's negligence if, at the moment of the shooting, he was trying to prevent serious injury or death."[82]

---

[76] *Carnaby*, 636 F.3d at 187 (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).
[77] *Id.*
[78] *Id.* at 187–88 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).
[79] *Graham*, 490 U.S. at 396; *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) ("This balancing test 'requires careful attention to the facts and circumstances of each particular case.'" (quoting *Graham*, 490 U.S. at 396)).
[80] *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).
[81] *Carnaby*, 636 F.3d at 188 (internal brackets omitted) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)).
[82] *Id.*

"[T]he proper inquiry is an objective one."[83] The "Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."[84] That is, "the 'reasonableness inquiry is objective: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"[85] Thus, an officer's "subjective intent is irrelevant to the reasonableness determination."[86]

Additionally, the Court's "inquiry into reasonableness is fact-specific and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[87] The Court must evaluate such instances as "'a reasonable officer on the scene,' and . . . 'allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[88] The Court "cannot allow the 'theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.'"[89]

Defendants maintain that Plaintiff has failed to state a claim for excessive force and unreasonable seizure as a matter of law and, further, that Plaintiff has failed to overcome the qualified immunity defense offered by Deputy Guillot. Specifically,

---

[83] *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 337 (5th Cir. 2008) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

[84] *Id.* (quoting *Devenpeck*, 543 U.S. at 153, 125 S.Ct. 588).

[85] *Davis v. Romer*, 600 F. App'x 926, 931 (5th Cir. 2015) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).

[86] *Id.*

[87] *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

[88] *Flores v. City of Palestine*, 381 F.3d 391, 399 (5th Cir. 2004) (internal brackets omitted) (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865).

[89] *Malbrough v. Stelly*, 814 F. App'x 798, 806 (5th Cir. 2020) (quoting *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994)).

Defendants argue Plaintiff has failed to plead anything more than conclusory allegations without factual predicate as to these claims.  They claim Plaintiff failed to plead any facts relating to Willis's conduct or any other circumstances leading up to the encounter and alleged use of force. Further, Plaintiff does not allege that Willis was unarmed or any other facts to suggest that Willis posed no danger to the officers.  Defendants maintain that the allegation that the only weapons seen on the doorbell camera video were those carried by law enforcement does not foreclose the possibility that Willis was armed when he opened the door. Defendants point to the deputies' and officers' reactions and statements following the shooting, which they claim indicate that Willis **did** pose a threat to their safety during the encounter. Regarding qualified immunity, Defendants contend a reasonable officer in Deputy Guillot's position, "forced to make a split-second decision in a tense, uncertain, and rapidly evolving scene, could have reasonably perceived the threat posed by Willis in possessing a gun when he opened the apartment door was sufficient to justify the use of deadly force."[90]

Plaintiff counters, arguing that she has alleged more than sufficient specific facts to state a claim for excessive force and unlawful seizure and to overcome qualified immunity at the pleadings stage.  Plaintiff contends "there is no question that apprehension by the use of deadly force is a seizure."[91]  Plaintiff argues Deputy Guillot's use of deadly force, under the factual circumstances alleged, was not objectively reasonable as no reasonable officer would have perceived a threat by Willis.  Plaintiff cites Fifth Circuit precedent holding that a disproportionate response by law enforcement

---

[90] Rec. Doc. 22-1, p. 10.
[91] Rec. Doc. 46, p. 7 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).

is unreasonable and unconstitutional.[92]

Plaintiff also addresses Defendants' claim that Plaintiff's allegations do not overcome qualified immunity "because she failed to plead facts that would 'foreclose the possibility that Willis was in fact armed at the time he opened the door.'"[93]    Plaintiff contends this argument fails for five reasons.  First, Defendants erroneously ask the Court to assume facts not pled – that Willis was armed when he opened the door – which is improper at the Rule 12(b)(6) stage.  Second, whether Willis was armed when he opened the door does not end the reasonableness inquiry because this question turns on a consideration of whether "'the totality of the circumstances justified a particular sort of … seizure. [94] This consideration requires assessing "the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment."[95] Third, Defendants cannot ask the Court to assume facts not pled, and the following allegations satisfy Plaintiff's pleading requirement:

> (1) the Defendant Officers created this situation by refusing to announce themselves—even when asked twice to do so—while aggressively banging on Deaughn's door; (2) Deaughn was shot before any threat could have been perceived by Deputy Guillot or the other Defendant Officers; (3) Deaughn was retreating inside his home behind a closing door, such that no reasonable officer could have perceived Deaughn's actions as a threat to the safety of Deputy Guillot or the other Defendant Officers; and (4) the two officers who were closest to Deaughn's door—one of whom was directly blocking Deputy Guillot's view of the door and Deaughn—saw no weapon,

---

[92] *Id.* at pp. 7-8 (quoting *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 324 (5th Cir. 2020)).
[93] *Id.* at p. 8 (quoting Rec. Doc. 22-1, p. 10).
[94] *Id.* at p. 9 (quoting *Garner*, 471 U.S. at 8-9).
[95] *Id.* (quoting *Kyle v. City of New Orleans*, 353 So. 2d 969, 973 (La. 1977)).

perceived no threat of harm, and were confused by Deputy Guillot's sudden and reckless conduct.[96]

Fourth, whether the use of lethal force is justified is a factual question that cannot be resolved at the Rule 12(b)(6) stage. Fifth, Defendants have ignored case law addressing the issue of reasonable contact by law enforcement engaging citizens in their homes while utilizing the "knock and talk" procedure. Plaintiff maintains that the manner in which the officers approached Willis's apartment and refused to identify themselves constituted an unreasonable "knock and talk." Plaintiff relies on the Supreme Court's decision in *Kentucky v. King*, wherein the Court held that police-created exigencies receive no deference under the Fourth Amendment.[97]

The Court finds that Plaintiff has satisfactorily alleged facts that both state a claim for excessive force and unreasonable seizure and overcome Deputy Guillot's assertion of qualified immunity at the Rule 12(b)(6) stage. While Defendants are correct that simply alleging that a victim "posed no threat" of harm to law enforcement is conclusory,[98] Plaintiff herein has supported this allegation with accompanying facts that, if proven true, would entitle her to relief. Plaintiff has alleged that the video captured by the doorbell camera shows that Deputy Guillot fired into the apartment even though he was never in position to observe whether Willis had a firearm. Further, Officer Jane Doe can be heard asking if Willis had a firearm, indicating that she did not observe this purported threat.

Moreover, Defendants' argument that Plaintiff's claims should be dismissed because she neither pled any facts relating to Willis's conduct nor alleged that Willis was

---

[96] *Id.* at pp. 9-10 (internal footnotes omitted).
[97] 563 U.S. 452, 462 (2011).
[98] *See Watkins v. Gautreaux*, 515 F.Supp.3d 500, 516 (M.D. La. 2021).

unarmed, is "unavailing" according to the Fifth Circuit's very recent decision in *Lewis v. Inocencio*, wherein the court stated:

> [T]he officers argue that the conclusions that Lockett posed no threat to anyone and that the officers fired without cause are improper interpretations of Lewis's allegations. The officers contend that Lewis's actual allegation— that Lockett was sitting in his parked vehicle when officers began firing—is insufficient on its own to give rise to such inferences. **According to the officers, Lewis was required to plead additional facts, such as whether Lockett's hands were in plain sight. This argument is unavailing.** Even when a defendant puts forth a qualified-immunity defense, the pleading standard is not heightened. *Allen*, 65 F.4th at 743. At this stage, Lewis has satisfied her burden to plead facts that "if proved, would defeat [the] claim of immunity." *Guerra*, 82 F.4th at 285 (alteration in original) (quoting *Waller*, 922 F.3d at 599). The factual "allegations need 'not conclusively establish' the plaintiffs' theory of the case." *Waller*, 922 F.3d at 600 (quoting *Doe v. Robertson*, 751 F.3d 383, 389 (5th Cir. 2014)). "For now, it suffices that" Lewis's allegations "are not 'naked assertions devoid of further factual enhancement.'" *Id*.[99]

Plaintiff has also successfully pled facts that undermine the reasonableness of the "knock and talk" investigation utilized by law enforcement in this encounter, which resulted in the alleged unlawful seizure of Willis. "Under the Fourth Amendment, a warrantless search of a person's home is presumptively unreasonable, and it is the government's burden to bring the search within an exception to the warrant requirement."[100] "Exigent circumstances is such an exception."[101] The application of the exigent-circumstances exception is considered on a case-by-case basis.[102] "It is available only on a showing by the government that the officers' entry into the home was supported by probable cause and justified by an exigent circumstance."[103] "No amount of probable cause can justify a

---

[99] No. 23-20098, 2024 WL 229274, at *3 (5th Cir. Jan. 22, 2024).
[100] *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980); United States v. Gomez–Moreno, 479 F.3d 350, 354 (5th Cir. 2007)).
[101] *Id.*
[102] *Lange v. California*, ―― U.S. ――, 141 S.Ct. 2011, 2018, 210 L.Ed.2d 486 (2021); *Birchfield v. North Dakota*, 579 U.S. 438, 457 (2016).
[103] *Aguirre*, 664 F.3d at 610 (citing *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001)).

warrantless search or seizure absent such exigent circumstances."[104] "In other words, even if the officers had probable cause to search the ... home, they had to have exigent circumstances to enter without a warrant."[105] Relevant here, the Fifth Circuit instructs that, to determine the presence of exigent circumstances, courts must consider "the degree of urgency involved and the amount of time necessary to obtain a warrant," and "the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought."[106]  Even where an exigency exists, the court must determine whether law enforcement created the exigency.[107] "In assessing whether the officers created the exigency, we focus on the 'reasonableness of the officers' investigative tactics leading up to the warrantless entry.'"[108]

Plaintiff alleges that law enforcement approached Willis's apartment "in tactical gear" as they were "purportedly looking for Deaughn's twin brother, Keaughn Willis, in connection with a wellness check on an adult 'habitual runaway' who was not answering her phone."[109]  The Court must accept this allegation as true.  The Court accepts as true the Plaintiff's allegation that law enforcement refused to identify themselves, despite being asked repeatedly who was at the door;[110] "they intentionally concealed their identities by positioning themselves outside the view of the apartment door's peephole;[111] and they banged on the door so aggressively that the apartment door "began to bow."[112]

---

[104] *Id.* (internal brackets omitted)(quoting *Horton v. California*, 496 U.S. 128, 137 n.7 (1990)).

[105] *Id.*

[106] *Id.* at 611 (quoting *United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008)).

[107] *United States v. Daniels*, 930 F.3d 393, 401 (5th Cir. 2019)(citing *Kentucky v. King*, 563 U.S. 452, 461 (2011)).

[108] *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) (quoting *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997)).

[109] Rec. Doc. 1, ¶ 1.

[110] *Id.* at ¶ 2.

[111] *Id.* at ¶ 3.

[112] *Id.* at ¶ 1.

Plaintiff also argues that these allegations are confirmed by the neighbor's doorbell camera video.[113] Cognizant of the Supreme Court's instruction that the gravity of the underlying offense giving rise to the warrantless home entry is relevant to the inquiry,[114] the officers' alleged conduct during the "knock and talk" does not comport with the alleged purpose for the visit.  Further, because it is alleged that Deputy Guillot could not have observed whether Willis (or anyone in the apartment) had a firearm at the time he began shooting, Plaintiff's allegations sufficiently raise a question regarding both whether an exigency existed, and if so, whether this exigency was created by the officers.  The Court notes that, even if Willis had a firearm, which the Court cannot assume at this stage, the Fifth Circuit has "consistently held that the presence of a firearm alone does not create an exigency without reason to believe that a suspect is aware of police surveillance."[115]

Defendants point to the statements by the law officers following this incident, but the Court cannot consider outside evidence in determining the sufficiency of a Complaint under Rule 12(b)(6).  Further, Defendants' reference to contradicting evidence relates to factual disputes more appropriately resolved at the summary judgment or trial stages, not within the context of their Motion to Dismiss.  The question before the Court is not whether Plaintiff will prevail at trial. Rather, the key issue is whether "[t]he [operative] complaint (1) on its face (2) … contain[s] enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[116]

---

[113] *Id*. at ¶¶ 31, 32, 35.
[114] *Lange v. California*, 141 S.Ct. at 2020 (citing *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984)).
[115] *Jones*, 239 F.3d at 720 (cotomg *United States v. Munoz-Guerra*, 788 F.2d 295, 298 (5th Cir. 1986)).
[116] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)(internal footnotes omitted).

In sum, viewing the factual allegations of the Complaint in the light most favorable to Plaintiff and considering the totality of the circumstances, Plaintiff has sufficiently stated a claim against Deputy Guillot for violation of Willis's Fourth Amendment rights to be free from excessive force and unlawful seizure.  The Court also finds that every reasonable officer in Deputy Guillot's position would have known, beyond doubt, that intentionally firing into a residence, absent the existence of an immediate threat to officer safety, is objectively unreasonable under clearly established law. Thus, Plaintiff has sufficiently alleged a constitutional violation to support her § 1983 excessive force and unlawful seizure claims against Deputy Guillot to withstand dismissal based on the qualified immunity defense.

### 2.    Failure to Provide Medical Care

Plaintiff also claims Deputy Guillot violated Willis's Fourteenth Amendment right to medical care after he was shot.  "After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment."[117] "The Due Process Clause of the Fourteenth Amendment guarantees that a person detained by police is entitled to medical care."[118] "Officers violate that right if they are deliberately indifferent to a serious illness or injury. A showing of deliberate indifference requires a showing that the defendant subjectively knew of a substantial and significant risk and that he effectively disregarded that risk."[119]

---

[117] *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir.1996).

[118] *Carter v. Reach*, 399 F. App'x 941, 942 (5th Cir. 2010).

[119] *Briggs v. Edwards*, Nos. 12-2145, 13*5335, 13-5342, 2014 WL 1050752, at *9 (E.D. La. Mar. 17, 2014)(citing *Jacobs v. West Feliciana Sheriff's Dep't.*, 228 F.3d 388, 395 (5th Cir.2000)).

Defendants acknowledge that "[t]he Due Process Clause of the Fourteenth Amendment 'requires the responsible government or governmental agency to provide medical care to persons who have been injured while being apprehended by the police.'"[120]  However, Defendants claim Plaintiff has failed to allege sufficient personal involvement by Deputy Guillot in this alleged Fourteenth Amendment violation.  Because "[p]ersonal involvement is an essential element of a cause of action against a public official in his individual capacity,"[121] Defendants contend Plaintiff's failure to specifically allege that Deputy Guillot personally made the decision to deny Willis medical care forecloses this claim.  Defendants further contend Plaintiff fails to allege deliberate indifference to a serious medical need by Deputy Guillot, arguing "the Complaint lacks sufficient allegations to show that Deputy Guillot was aware of facts from which the inference could be drawn that a substantial risk of harm existed, and importantly, that Deputy Guillot actually drew that inference."[122]  Defendants argue that Plaintiff fails to allege that substantial harm resulted from any alleged delay in medical care, and "[t]here is no indication that any alleged delay between the shooting and Willis being approached by EMS or law enforcement either increased his risk of death or bodily harm or 'caused pain that would have been alleviated had [Willis] been approached by [a law enforcement officer or EMS] at an earlier time.'"[123]  Defendants direct the Court to the Fifth Circuit's

---

[120] Rec. Doc. 22-1, p. 12 (quoting *Mason v. Lafayette City-Par. Consol. Gov't,* 806 F.3d 268, 279 (5th Cir. 2015) (alterations omitted); *see also Hill v. Carroll County, Mississippi*, 587 F.3d 230, 237 (5th Cir. 2009) (citing *Nerren*, 86 F.3d at 473)).

[121] *Id.* at p. 13 (citing *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983)).

[122] *Id.*

[123] *Id.* at pp. 13-14 (internal brackets omitted)(quoting *Batyukova v. Doege*, 994 F.3d 717, 733 (5th Cir. 2021); *see also Martinez v. Maverick Cty.*, 507 F. App'x 446, 448 (5th Cir. 2013) (affirming the district court's finding that plaintiff could not maintain a claim for post-shooting denial of adequate medical care because plaintiff could not identify any injury caused by the delay in providing medical care); *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (where plaintiff failed to plead any substantial harm resulting from the officers'

admonition that "[t]he time taken to clear the scene, both initially and subsequently, is a legitimate governmental objective preventing that delay from being a basis for deliberate indifference."[124]  Defendants also argue that any ostensible claim for failure to intervene related to medical care should be dismissed because, "any alleged 'inaction by an agent on the scene would be cognizable as a denial of medical care rather than failing to intervene in the denial of medical care.'"[125]  Finally, Defendants contend that, in any event, Plaintiff has not overcome Deputy Guillot's shield of qualified immunity because she has not "pled sufficient facts as to Deputy Guillot's conduct that every reasonable officer would have understood that Deputy Guillot's conduct violated Willis's Fourteenth Amendment rights."[126]

Plaintiff counters that she has "alleged in great detail Deputy Guillot's personal involvement in shooting and killing Deaughn, as captured via audio and video from the Ring camera," such that Defendants "cannot credibly argue that Deputy Guillot was not 'aware of facts from which the inference could be drawn that a substantial risk of harm existed.'"[127]  Plaintiff maintains that "[t]hese same facts are also sufficient at the pleadings stage to imply that Deaughn's need for medical care was 'obvious,' even 'to any non-

---

"half-hour delay in calling for paramedics," dismissal of denial-of-medical-treatment claims against the officers was appropriate)).

[124] *Batyukova*, 994 F.3d at 733 (internal quotation marks omitted) (citing *Baldwin v. Dorsey*, 964 F.3d 320, 327 (5th Cir. 2020) ("Pre-trial detainees must be provided with reasonable medical care, unless the failure to supply it is reasonably related to a legitimate government objective.")).

[125] Rec. Doc. 22-1, p. 14 (quoting *Eriksen v. Ten Unknown Named Fed. Agents,* 2015 U.S. Dist. LEXIS 194358, at *17 (W.D. Tex. Oct. 16, 2015), *report and recommendation adopted*, *Eriksen v. Ten Unknown Named Fed. Agents*, 2015 U.S. Dist. LEXIS 194357 (W.D. Tex., Nov. 17, 2015) ("The Court further finds that a claim for failure to intervene in the denial of medical care is not cognizable under the law because the inaction by an agent on the scene would be cognizable as a denial of medical care rather than failing to intervene in the denial of medical care.")).

[126] *Id.*

[127] Rec. Doc. 46, p. 16 (quoting Rec. Doc. 22-1, p. 13).

medical' law enforcement officer."[128] Plaintiff cites the Fifth Circuit's decision in *Allen v. Hays*, wherein the court found that a plaintiff sufficiently alleged a failure to render medical care claim by alleging that the decedent "was bleeding, moaning, groaning from pain, and in obvious and critical need of emergency medical care" and that the defendant officers "did not provide life-saving measures or timely summon medical care or permit medical personnel to treat Mr. Allen."[129]  Plaintiff notes that she alleged that each Defendant, including Deputy Guillot, not only failed to timely call emergency medical services or render emergency medical care but also prevented the administration of medical care by a bystander trained as a nurse.

Next, Plaintiff maintains that she alleged facts sufficient to raise the inference that Deputy Guillot's failure to contact medical services and refusal to allow medical care by the bystander resulted in substantial harm and death.[130]  Plaintiff argues this is not a case involving an unseen illness or where all hope was lost; rather, as Plaintiff alleged, Willis "'lay bleeding from his gunshot wounds over forty-five minutes'; someone with medical training and experience was trying to prevent Deaughn from 'bleed[ing] out' from his gunshot wounds while the defendant officers, including Deputy Guillot, 'prevented her from attempting to save his life' or 'place a towel on his wounds to mitigate the blood loss.'"[131]  That Willis "cried out that he had been shot"[132] also demonstrates that he was

---

[128] *Id.* (quoting *O'Quin v. Gautreaux*, No. 14-98, 2015 WL 1478194, at *5 (M.D. La. Mar. 31, 2015)(quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (finding that plaintiff plausibly alleged a failure to render medical care claim where his "condition was so dire and obvious that [a non-medical prison official's] failure to summon immediate medical attention . . . amounted to deliberate indifference")).
[129] 63 F.4th 736, 747 (5th Cir. 2023).
[130] *See* Rec. Doc. 1, ¶ 130.
[131] Rec. Doc. 46, p. 17 (quoting Rec. Doc. 1, ¶ 38).
[132] Rec. Doc. 1, ¶ 29.

conscious at the time he was shot, supporting Plaintiff's claim that timely medical care could have mitigated the ultimate harm.

Plaintiff also decries Defendants' argument that a legitimate governmental objective justified the delay in pursuing medical care.  Plaintiff points to the fact that there were five officers at the scene of the incident, which "belies any argument that '[t]he time taken to clear the scene . . . is a legitimate governmental objective' that would render Deputy Guillot and the Defendant Officers' callous indifference somehow reasonable, as it only required one officer to contact emergency medical services."[133]  Plaintiff further argues that all occupants of the apartment were detained within minutes of Deputy Guillot shooting Willis, so the "time taken to clear the scene" was minimal.  Plaintiff again cites to *Allen*, wherein the Fifth Circuit concluded that, "[a]s alleged, Hayes stood by for six minutes without performing any medical care or calling for medical backup, aware that he had shot Allen several times and witnessed him crash into a tree, and after he had radioed for police backup for himself. In this posture, that is sufficient to survive a motion to dismiss."[134]

Finally, Plaintiff challenges Deputy Guillot's assertion of the qualified immunity defense on this claim, arguing that clearly established law demonstrates that Deputy Guillot's failure to render medical care to Willis was unreasonable under the circumstances.  Plaintiff cites the Fifth Circuit's decision in *Nerren v. Livingston Police Department*, wherein the court held that, "[a]t least since 1987, it has been clear that pretrial detainees, a set that includes arrestees, are entitled to reasonable medical care unless the failure to supply that care is reasonably related to a legitimate governmental

---

[133] Rec. Doc. 46, pp. 17-18 (quoting Rec. Doc. 22-1, p. 14).
[134] *Allen*, 63 F.4th at 748.

objective."[135]  Plaintiff also rely on the Fifth Circuit's pronouncement in *Cope v. Codgill*: "[W]e now make clear that promptly failing to call for emergency assistance when a detainee faces a known, serious medical emergency . . . constitutes unconstitutional conduct."[136] In *Allen*, the court concluded that waiting six minutes to call Emergency Medical Services was a clearly established constitutional violation under *Cope v. Codgill*.[137] Thus, Plaintiff maintains there was no legitimate governmental objective in the Defendants' delay in contacting or securing emergency medical services, nor was there a legitimate governmental objective to deny rendering emergency medical aid or prevent a bystander with medical training from continuing to provide emergency medical care.

In response, Defendants' primary argument is that, because Plaintiff alleged the failure to render medical care claim against all officers at the scene generally, rather than focus on Deputy Guillot specifically, she has failed to state a claim against Deputy Guillot. The Court rejects this argument.  Plaintiff undisputedly alleges that Deputy Guillot fired the shots that hit and ultimately killed Willis.[138]  Plaintiff then alleges:

> 38. Deaughn lay bleeding from his gunshot wounds **over forty-five minutes** before dying. Deaughn's mother, who had experience as a nurse, attempted to give Deaughn emergency medical care to make sure he was not "bleeding out" from his gunshot wounds; however, the defendant officers prevented her from giving Deaughn any medical care and prevented her from attempting to save his life. Instead, they threatened her with arrest if she got any closer. She was not even permitted to place a towel on his wounds to mitigate the blood loss.
>
> . . .
>
> 40. After being detained, Deaughn's mother called again for the defendant officers to help stop the bleeding in another last-minute effort to save Deaughn's life, but the defendant officers refused. Instead, the defendant officers conducted a search of the apartment while ignoring Deaughn's

---

[135] 86 F.3d 469, 474 (5th Cir. 1996).
[136] 3 F.4th 198, 209 (5th Cir. 2021).
[137] *Allen*, 65 F.4th at 747-48.
[138] Rec. Doc. 1, ¶¶ 32-33.

body, still bleeding on the floor. Deaughn was later pronounced dead on the scene by the East Baton Rouge Parish Coroner's Office from the gunshot wounds inflicted by Deputy Guillot.[139]

The Court finds the Fifth Circuit's decision in *Allen* directly on point.  In *Allen*, a "58-year-old veteran known to the Houston Police Department ('HPD') for his documented history of PTSD" was stopped by two HPD officers "for a routine traffic stop."[140]  During the stop, the first officer "heard Allen state that he was going to reach for his wallet."[141]  On the passenger side, the second officer "instructed Allen to stop moving, to stop reaching, and to remove his foot from the gas pedal. [That officer] had a taser in his pocket but did not use it. Instead, within seconds and without further warning, [that officer] leaned across [the person in the passenger seat] and fired six shots, hitting Allen five times at point-blank range."[142]  In addressing the plaintiff's claim for failure to render medical care and the application of qualified immunity, the court explained:

> Plaintiffs must also show that the constitutional violation was clearly established at the time of Hayes's actions. *Cope* was decided after Hayes pulled Allen over and could not establish the law for Hayes. The *Cope* court, in a summary judgment posture, held that "[e]xisting case law ... was not so clearly on point as to 'place[ ] the statutory or constitutional question beyond debate.'" *Id*. (citing *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)). "Until today, we have not spoken directly on whether failing to call for emergency assistance in response to a serious threat to an inmate's life constitutes deliberate indifference." *Id*. Still, the *Cope* court noted that *Dyer* had previously held "existing precedent showed that officers who, 'despite being aware of the detainee's dire condition[,] ... did nothing to secure medical help' at all were on 'fair warning' that their behavior was deliberately indifferent." *Id*. (quoting *Dyer*, 964 F.3d at 384–85) (omission in original). Hayes's conduct was significantly more severe than that of the *Cope* defendant—unlike in *Cope*, where the jailer did not necessarily know the extent of the victim's injuries, **Hayes knew he had shot Allen**.

---

[139] *Id*. at ¶¶ 38, 40 (emphasis added).
[140] *Allen*, 65 F.4th at 741-742.
[141] *Id*. at 742.
[142] *Id*.

Plaintiffs have therefore pleaded sufficient facts to make it at least plausible that Hayes's actions were a violation of clearly established law. As alleged, Hayes **stood by for six minutes without performing any medical care or calling for medical backup, aware that he had shot Allen several times** and witnessed him crash into a tree, and after he had radioed for police backup for himself. In this posture, that is sufficient to survive a motion to dismiss.[143]

Plaintiff alleges Deputy Guillot shot Willis, and she alleges that Deputy Guillot, along with the other officers on the scene, while observing Willis's obvious condition, took no efforts to render or seek any potentially life-saving medical care.  Just like Hayes in *Allen*, Deputy Guillot knew he had shot Willis, perhaps "several times."  Accordingly, and based on the same reasoning and analysis set forth in *Allen*, the Court finds that Plaintiff has pled facts showing that Deputy Guillot had "subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference."[144] "Under currently applicable law, [Plaintiff] has alleged a violation of a clearly established right."[145] Defendants' motion to dismiss the individual capacity claim for failure to render medical care against Deputy Guillot is denied.

### 3.    Punitive Damages

Plaintiff seeks punitive damages in this case. Punitive damages may be awarded under § 1983 when a "defendant's conduct … involves reckless or callous indifference to the federally protected rights of others."[146] Stated another way, under § 1983, punitive damages are discretionary and "may be awarded only if the official conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional

---

[143] *Id.* at 748 (emphasis added).
[144] *Batyukova v. Doege*, 994 F.3d 717, 732 (5th Cir. 2021).
[145] *Nerren*, 86 F.3d at 473.
[146] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

rights."[147]

Defendants move to dismiss this claim arguing generally that Plaintiff has failed to allege sufficient facts to demonstrate that Deputy Guillot's actions were due to reckless or intentional disregard for Willis's constitutional rights.  The Court disagrees.  Based on the allegations and analysis discussed above regarding Plaintiff's excessive force, unreasonable seizure, and failure to render medical aid claims, the Court finds that Plaintiff has sufficiently pled a claim for punitive damages against Deputy Guillot.  However, the Court agrees with Defendants that, to the extent Plaintiff seeks punitive damages against a municipal defendant, such a claim is foreclosed by long-standing jurisprudence.[148]

### D.  Official Capacity Claims – *Monell* Liability

A municipality may be subject to liability under § 1983 when the municipality maintains an unconstitutional policy or custom.[149] To state a claim against a municipal defendant for an alleged unconstitutional policy or practice, the plaintiff must allege that (1) an official policy (2) promulgated by a policymaker (3) was the moving force behind the violation of a constitutional right.[150]

An "official policy or custom" giving rise to *Monell* liability may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[151]  However, "[a]

---

[147] *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994) (internal quotations omitted).

[148] *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Mitchell v. City of New Orleans*, 184 F.Supp.3d 360, 378 (E.D. La. 2016); *Pemberton v. West Feliciana Parish School Bd.*, No. 09-30-C, 2010 WL 431572, at *7 (M.D. La. Feb. 3, 2010).

[149] *Valle v. City of Houston*, 613 F.3d 536, 541-542 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[150] *Hicks–Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).

[151] *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quotation omitted).

plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[152] To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' ... a plaintiff must do more than describe the incident that gave rise to his injury."[153]

Critically, in the absence of an underlying constitutional violation, there can be no municipal liability under *Monell*.[154] The Court having found that Plaintiff sufficiently pled an underlying constitutional violation, the Court will consider the *Monell* claims asserted by Plaintiff.

### 1. Inadequate Screening/Negligent Hiring

Plaintiff alleges that, "[b]ased on the conduct of Deputy Eno Guillot and upon information and belief, Sheriff Gautreaux and the EBRSO did not properly examine and scrutinize the background of Deputy Guillot before hiring him."[155] Plaintiff further alleges[156] that in 2007, the Louisiana Supreme Court suppressed evidence obtained by then-Officer Guillot during an arrest, noting that Guillot "forcibly took the defendant, who did not resist, to the ground" without "hav[ing] probable cause to arrest the defendant for the crime of resisting an officer."[157] Based on this history, Plaintiff alleges Sherriff Gautreaux was deliberately indifferent to the "rights of innocent third parties by failing to

---

[152] *Pudas v. St. Tammany Parish., La*., No. 18-10052, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019) (Barbier, J.) (alteration in original) (quoting *Colle v. Brazos Cnty., Tex*., 981 F.2d 237, 245 (5th Cir. 1993)).
[153] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[154] *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (noting that because there was no constitutional violation, there can be no *Monell* claims); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to demonstrate an underlying constitutional violation, the claims against the county and the officers in their official capacities failed); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).
[155] Rec. Doc. 1, ¶ 48.
[156] *Id*. at ¶ 49.
[157] *State v. Boyer*, 967 So. 2d 458, 475 (La. 2007).

adequately screen Deputy Guillot before hiring him."[158]

Plaintiff further alleges a pattern or practice of inadequate screening as to Officer John Doe, Captain Johnny Scott, and Deputy Guillot, and Plaintiff cites to decisions purportedly in support of this claim.[159]

When considering a claim of negligent hiring, the Supreme Court has established two fundamental requirements for holding a municipality liable under Section 1983 for inadequate hiring policies.[160] First, the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences.[161] Second, the municipality must be the "moving force" behind the constitutional violation.[162] For the EBRSO to be liable for hiring Deputy Guillot, the Court must find "that adequate scrutiny of his background would have led a reasonable supervisor to conclude that the plainly obvious consequence of hiring him" would have resulted in a situation like that alleged by the Plaintiff in this case.[163] Even a showing of heightened negligence in hiring will not give rise to a constitutional violation.[164] Further,

> [t]here must be a strong connection between the background of the particular applicant and the specific violation alleged. Accordingly, plaintiffs cannot succeed in defeating summary judgment merely because there was a probability that a poorly-screened officer would violate their protected rights; instead, they must show that the hired officer was highly likely to inflict the particular type of injury suffered by them.[165]

[158] Rec. Doc. 1, ¶ 49.
[159] *Id.* at ¶ ¶ 141-143.
[160] *Hardeman v. Kerry County Tex.*, 244 F. App'x 593, 596 (5th Cir. 2007).
[161] *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).
[162] *Id.*
[163] *Hardeman*, 244 Fed. Appx. at 596 (citing *Gros v. City of Grand Prairie*, 209 F.3d 431, 433–34 (5th Cir. 2000)("[D]eliberate indifference exists where adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights.")).
[164] *Gros*, 209 F.3d at 433.
[165] *Id.*

Defendants move to dismiss this claim, arguing that Plaintiff's citation to *Boyer*, a single incident involving Deputy Guillot back in July 2006, is insufficient to support her claim that Sheriff Gautreaux was deliberately indifferent to the risk that Deputy Guillot would violate the constitutional rights of others.  Defendants maintain that Deputy Guillot's conduct in *Boyer* did not make it "plainly obvious" that Deputy Guillot was likely to commit constitutional violations in the same manner alleged by Plaintiff in this case.  Defendants also point out that the decision in *Boyer*, suppression in a criminal matter, is distinct from a finding of civil liability relating to Deputy Guillot's conduct.  Further, Plaintiff points to three alleged instances over the course of sixteen years to support her claim that the Sheriff has a general policy of failing to adequately screen potential employees, but Plaintiff cites no lawsuit where any liability was found against the EBRSO to establish her claims.

Plaintiff responds that Deputy Guillot's conduct in *Boyer* is sufficient to show Sheriff Gautreaux's deliberate indifference to Deputy Guillot's "proclivity toward violence" which "would have led a reasonable supervisor to conclude that the plainly obvious consequences" of hiring Deputy Guillot "would be the deprivation of a third party's constitutional rights."[166]  Plaintiff further maintains that she has properly alleged a custom, policy, practice, or pattern of Sheriff Gautreaux's failure to adequately screen employees based on the alleged histories of Officer John Doe, Captain Johnny Scott, and Deputy Guillot.[167]

---

[166] Rec. Doc. 46, p. 22 (internal quotation marks omitted) (quoting *Gomez v. Galman*, 18 F.4th 769, 778 (5th Cir. 2021)) (internal quotation marks omitted).
[167] *See* Rec. Doc. 1 ¶¶ 49, 60, 139–43.

The Court finds that Plaintiff has failed to state a claim against Sheriff Gautreaux for inadequate screening and negligent hiring. She makes only conclusory allegations that Officer John Doe and Captain Johnny Scott were inadequately trained and cites to cases wherein their purported deficiencies are discussed. However, a simple reading of the cases demonstrate that they offer no support for Plaintiff's allegations here. Plaintiff argues that another section of this Court, in *Stewart v. Gautreaux*, discussed Scott's "insufficient 'training and background to properly manage booking and records.'"[168] This characterization is disingenuous, at best. In that overdetention case, the Court merely recounted the allegations asserted against Captain Scott; however, it actually dismissed the plaintiff's claims against Scott, finding that the plaintiff failed to allege sufficient facts to demonstrate that Scott's actions were objectively unreasonable.[169] The Court also dismissed the negligent hiring and screening claim the plaintiff asserted against Sheriff Gautreaux:

> Stewart's proposed "amended claims" allege that Scott "did not have the training and background to properly manage booking and records." Her proposed "amended claims" fail, however, to allege any additional facts related to Scott's background or Gautreaux's background check and/or hiring process. Stewart also fails to allege that Gautreaux hired Scott, despite the likelihood that he would inflict the particular type of injury suffered by Stewart. Thus, her proposed "amended claim" is insufficient.[170]

---

[168] Rec. Doc. 46, p. 23 (quoting *Stewart v. Gautreaux*, No. 12-594-BAJ-RLB, 2013 WL 2286103, at *1, *4–*5 n.3 (M.D. La. May 21, 2013).

[169] *Stewart*, 2013 WL 2286103, at *7 ("Stewart's complaint fails to allege that Scott received the written inquiries Stewart allegedly sent to the booking and records department. Nor does her complaint allege that she made Scott personally aware of the continuing constitutional violation … In summary, Stewart has failed to allege sufficient facts to demonstrate a causal connection between Scott's specific conduct and her continuing incarceration.").

[170] *Id.* at *5.

Likewise, the alleged negligent hiring and inadequate screening regarding Scott's lack of proper bookkeeping and record management training bears no resemblance to the alleged failure to screen and negligent hiring of Deputy Guillot.

As to Officer John Doe, Plaintiff directs the Court to review the Complaint in *Chambers v. Gautreaux*, No. 20-cv-00428 (M.D. La. July 6, 2020), at ¶ 23, but this complaint involves Scott.  Plaintiff alleges no facts regarding Sheriff Gautreaux's hiring and retaining of John Doe as John Doe has not been identified.  Plaintiff's offered cases miss the mark.

The Court also finds Plaintiff's reliance on the *Boyer* decision misplaced.  First, as Defendants note, *Boyer* addresses a criminal motion to suppress evidence and is, thus, not "fairly similar" to a § 1983 excessive force case.  Second, the facts of *Boyer* occurred approximately sixteen years before the incident involved in the present case. While the Louisiana Supreme Court did state that "Officer Guillot forcibly took the defendant, who did not resist, to the ground," this statement was made in connection with the court's finding that Boyer's conduct during the incident did not constitute resisting an officer.[171] Nowhere did the court refer to Guillot's conduct as violent or excessive.  But, for the sake of argument, if Guillot's conduct was excessive in *Boyer*, a single incident occurring sixteen years prior to the facts of this case does not demonstrate a "proclivity toward violence" such that Sheriff Gautreaux was deliberately indifferent to a known risk in the screening and hiring of Guillot.  Dismissal is warranted for this claim.

---

[171] *State v. Boyer*, 967 So.2d 458, 475 (La. 2007).

2.  <u>Failure to Train, Supervise, Discipline</u>

A *Monell* claim may be based on a municipality's alleged failure to train, supervise, or discipline employees.[172]  To state a claim for failing to train, supervise, or discipline an employee, the plaintiff must allege "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting [these] deficient polic[ies], and (3) that the inadequate training, supervisory, or disciplinary polic[ies] directly caused the violations in question."[173]

"Deliberate indifference" can be demonstrated in two ways: "First and most often, deliberate indifference generally requires notice of a pattern of similar violations at the time the plaintiff's own rights were violated .... Second, we have noted that in narrow circumstances, when a constitutional violation results as the highly predictable consequence" of a municipality's failure to properly hire, train, supervise, or discipline, "the failure … can amount to deliberate indifference."[174]

As to the first method of showing deliberate indifference, the Fifth Circuit has held that "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference."[175] Regarding the second method, the plaintiff must allege that the "highly predictable consequence" of not supervising [the employees] was that they would" commit the specific constitutional violation alleged.[176] "An injury is 'highly predictable' where the municipality 'fail[s] to train its employees

---

[172] *See Peña  v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)
[173] *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (citing *Ratliff v. Aransas Cnty., Tex*., 948 F.3d 281, 285 (5th Cir. 2020)).
[174] *Robles v. Ciarletta*, 797 F. App'x 821, 833–34 (5th Cir. 2019).
[175] *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (internal quotation and citation omitted).
[176] *Peterson v. City of Fort Worth, Tex*., 588 F.3d 838, 850 (5th Cir. 2009).

concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'"[177] Similarly, to establish liability for failure to supervise, "it at least must have been obvious that the highly predictable consequence of not supervising [the employees] was that they would commit the specific constitutional violation alleged."[178]  To establish a failure to discipline, a plaintiff must plead that: 1) the municipality failed to discipline its employees, 2) the failure to discipline amounted to deliberate indifference, and 3) the failure to discipline directly caused the constitutional violations in question.[179]

Here, Plaintiff alleges Sheriff Gautreaux failed to properly train Deputy Guillot regarding the constitutional use of force, "the proper method of interacting nonviolently with citizens, handling military-style weapons, and discharging his military-style weapon in a method calculated not to subject an unknown number of innocent citizens to severe risk of death or serious bodily injury."[180] Plaintiff also alleges the Sheriff is liable for failing to adequately supervise and discipline employees following their use of excessive force.[181]

Defendants seek dismissal of these claims for several reasons.  First, Plaintiff fails to specifically plead how the Sheriff's training or supervision programs are defective; indeed, Plaintiff offers no facts about what training/supervision was provided, or what the Sheriff failed to provide. Plaintiff likewise fails to adequately plead deliberate indifference as she fails to plead facts demonstrating a pattern of similar violations that should have

---

[177] *Hankins*, 2022 WL 2208848, at *7 (alteration in original) (quoting *Hutcheson v. Dallas Cty., Tex*., 994 F.3d 477, 482-83 (5th Cir. 2021)).
[178] *Peterson*, 588 F.3d at 850.
[179] *See Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (citing *Piotrowski v. city of Houston*, 237 F.3d 567, 580 (5th Cir. 2001) (extending the *City of Canton* factors to include a failure to discipline claim)).
[180] Rec. Doc. 1, ¶ ¶ 50-51, 145-153.
[181] *Id*. at ¶ 152.

placed the Sheriff on notice of the need for training/supervision. Plaintiff cites to seven cases filed against Sheriff Gautreaux between 2016 and 2020,[182] claiming that in each case, "EBRSO employees used excessive force."[183]  However, Defendants point out that these cases do not demonstrate a pattern of excessive force because "none of the referenced cases resulted in an adjudication of liability against any EBRSO defendant or any finding by the Court of a constitutional violation."[184]  Further, Plaintiff fails to sufficiently plead whether the conduct at issue in the cited cases was sufficiently similar to the facts alleged here such that it could establish a pattern.

Regarding Plaintiff's failure to discipline claim, Defendants contend Plaintiff's pleadings are similarly deficient.  Plaintiff alleges a general failure to discipline deputies, including Guillot, who have used excessive force.[185]  Plaintiff cites to Deputy Guillot's actions in this matter and the disciplinary history of another deputy about whom Plaintiff alleges "had been disciplined at least seven times" prior to the alleged use of force on an inmate and that he was demoted following that incident.[186]  Plaintiff claims "each of these officers returned to active duty without an adequate 'cool off' period of administrative leave."[187]  Defendants also argue Plaintiff fails to specifically plead deliberate indifference as to her failure to discipline claims.  Defendants cite the Eastern District of Louisiana's decision in *Hegeman v. Harrison*, wherein the court held that a plaintiff stated a claim for failure to discipline where the plaintiff alleged that the City "repeatedly failed to discipline [an individual officer] and others for their use of force," and that "over 200" complaints

---

[182] *Id.* at ¶ ¶ 54-65.
[183] *Id.* at ¶ 148.
[184] Rec. Doc. 22-1, pp. 25-26.
[185] Rec. Doc. 1, ¶¶ 145-153, 62-65.
[186] *Id.* at ¶¶ 63-65.
[187] *Id.* at ¶ 151.

received by the City within the prior four years "concerned the use of unauthorized force."[188]    Defendants contend: "In contrast, Plaintiff's allegations in this case are insufficient to establish 'a pattern of similar constitutional violations went ignored.'"[189]

In opposing Defendants' motion to dismiss this claim, Plaintiff counters simply that she has adequately pled the EBRSO's failure to properly discipline Deputy Demarcus Braxton, "as well as the numerous cases in which EBRSO employees used excessive force without being publicly or privately disciplined."[190]  However, Plaintiff contends that even if her allegations of a pattern of inadequate discipline are deficient, the alleged conduct of Deputy Guillot triggers the single incident exception as explained in *Burge v. St. Tammany Parish*.[191] This exception applies "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train."[192]  Plaintiff argues "the allegations in the Complaint raise the fair inference that the Defendant Officers' conduct points to a deficiency in training."[193] Plaintiff points to the allegations that the Defendant Officers arrived at Willis's apartment with guns drawn, but without a search warrant or arrest warrant, and aggressively knocked on the door despite refusing to announce or identify themselves. Then, Deputy Guillot fired multiple shots through the door, knowing that Willis was standing behind it, but without having observed any direct or immediate threat. Plaintiff posits: "Reasonable trained law enforcement

---

[188] *See* Rec. Doc. 22-1, p. 27 (citing *Hegeman v. Harrison*, No. 18-613, 2019 WL 1277523, at *12 (E.D. La. Mar. 20, 2019).
[189] Rec. Doc. 22-1, p. 27 (internal brackets omitted)(quoting *Hegeman*, 2019 WL 1277523, at *12).
[190] Rec. Doc. 46, p. 24 (citing Rec. Doc. 1, ¶¶ 56–65, 150).
[191] 336 F.3d 363, 363, 373 (5th Cir. 2003).
[192] *Id.* (citing *Brown v. Bryan County*, 219 F.3d 450, 461 (5th Cir. 2000)).
[193] Rec. Doc. 46, p. 24.

officers simply do not conduct themselves with the level of excess and hyper aggression demonstrated by the Defendant Officers."[194]

Plaintiff cites to the Western District of Texas decision in *Schaefer v. Whitted*,[195] wherein the court deemed sufficient allegations that a police officer arrived to the plaintiff's property without announcing himself, requesting permission, or obtaining a warrant, and then ultimately shot and killed the plaintiff after an altercation, finding that the facts "did not suggest there was any need to use force before first commanding Schaefer to surrender his weapon."[196]  The court ultimately held that "the need for more or different training [was] obvious, the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[197] The court further held that "it [wa]s highly predictable failing to train officers regarding how to act with individuals legally entitled to carry firearms would result in the constitutional violation alleged here and this failure to train was a moving force behind Schaefer's death."[198] Plaintiff maintains the facts alleged here are similar to those alleged in *Schaefer* such that the single incident exception applies.

Defendants respond that Plaintiff's allegations identifying nineteen plaintiffs in other lawsuits, allegedly subjected to excessive force by EBRSO and/or BRPD officers,[199] do not save this claim from dismissal.  Defendants note that, in each of these cases, the EBRSO defendants were dismissed with prejudice under Rule 12(b)(6).[200]  Defendants

---

[194] *Id.* at pp. 24-25.
[195] 121 F. Supp. 3d 701 (W.D. Tex. 2015).
[196] *Id.* at 714.
[197] *Id.* at 719 (alterations in original)(quotations and citations omitted).
[198] *Id.*
[199] Rec. Doc. 1, ¶ 56.
[200] Rec. Doc. 53, pp. 7-8, n.33 (noting "[s]pecifically, the EBRSO defendants' Rule 12(b)(6) Motions to Dismiss were granted on: April 10, 2019, in Civil Action No. 17-328 (Day) at Rec. Doc. 89; August 19, 2020,

maintain that, because none of these lawsuits resulted in an adjudication of liability on the part of the EBRSO, these lawsuits do not demonstrate any policy or practice of the Defendants' failure to train, supervise, or discipline officers. Regarding the single incident exception, Defendants emphasize that application of this narrowly-applied exception requires an allegation of a "complete failure to train," as explained by this Court in *Bibbins v. City of Baton Rouge*:[201]

> In *Brown*, the Fifth Circuit found the single incident exception to apply when there was an utter failure to train and supervise. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 462 (5th Cir. 2000). The Fifth Circuit later stated in *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002), that the single incident exception applied in *Brown* because the county in that case "failed to provide *any* training or supervision for a young, inexperienced officer with a record of recklessness." *Cozzo*, 279 F.3d at 288 (internal quotation marks and citations omitted). The court also noted that "there is a difference between a *complete failure to train* as in [*Brown*] and a failure to train in one limited area."[202]

Because Plaintiff made no such allegations, Defendants argue Plaintiff has failed to adequately plead the single incident exception.

The Court finds that Plaintiff has failed to state a claim for failure to train, supervise, and discipline. First, Plaintiff has failed to allege with specificity how any existing training program is lacking or what kind of training was necessary but not provided. Plaintiff likewise fails to specifically plead how the facts of the other lawsuits referenced are sufficiently similar to the facts in the present case. A blanket claim that each case

---

in Civil Action No. 17-436 (Gilbert) at Rec. Doc. 208; September 16, 2020, in Civil Action No. 17-439 (Imani, Muhammad, Pollard, Nichols, Cheney, Cheney, Onuoha, Savage, Foytlin, Feldman, Luna, Sandi, Liebeskind, Phoenix, Fishbein) at Rec. Doc. 231; September 16, 2020, in Civil Action No. 17-443 (Batiste-Swilley) at Rec. Doc. 200; and September 19, 2020, in Civil Action No. 17-324 (Geller) at Rec. Doc. 195.").
[201] 489 F. Supp. 2d 562 (M.D. La. 2007).
[202] *Id.* at 584 (emphasis in original).

contains allegations of excessive force does not satisfy the applicable standards.   As

explained by the Fifth Circuit in *Saenz v. City of El Paso*:

> A plaintiff must allege facts to plausibly suggest the municipality's deliberate indifference to the need for proper training. Ordinarily, to meet this burden, a plaintiff may allege that the municipality had "[n]otice of a pattern of similar violations," which were "fairly similar to what ultimately transpired." *Id.* at 381; *see also Connick*, 563 U.S. at 62–63, 131 S.Ct. 1350. "The number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies...." *Moreno v. City of Dallas*, No. 3:13–CV–4106–B, 2015 WL 3890467, at *8 (N.D.Tex. June 18, 2015). Here, Saenz alleges twenty-one previous incidents, spanning a period of nineteen years, involving an individual killed by a police officer. However, these allegations do not allow the court to draw the reasonable inference that any of these events were anything more than isolated incidents. Without further context surrounding the circumstances, the allegations of prior shootings do not plausibly suggest a pattern of abuses to which the City was deliberately indifferent. Though Saenz is not required to provide detailed factual allegations, the complaint must "raise a right to relief above the speculative level." *In re La. Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir.2014) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Without some further factual enhancement, Saenz's complaint "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 546, 127 S.Ct. 1955.[203]

Plaintiff does not plead how the alleged facts in these other lawsuits are "fairly similar to

what ultimately transpired" in this case to sufficiently place the Sheriff on notice of this

purported failure to train.

Moreover, while the Court must accept Plaintiff's factual allegations as true under

Rule 12(b)(6), the Court is not bound to accept as true any and all allegations from other

lawsuits referenced by Plaintiff.   In *Merisier v. Johnson County*,[204] the court discussed

this issue in the context of a request to take judicial notice of other lawsuits:

> The Court may take judicial notice of the existence of these lawsuits but not Jeanty's allegations, as his allegations are neither undisputed nor made in this proceeding. *Compare Arkansas v. Wilmington Trust Nat'l Ass'n*, No. 3:18-cv-1481-L, 2020 WL 1249570, at *7 n.5 (N.D. Tex. Mar. 16, 2020)

---

[203] 637 F. App'x 828, 832 (5th Cir. 2016).
[204] No. 3:19-cv-2911-X-BN, 2021 WL 681443 (N.D. Tex. Jan. 14, 2021).

(Under Federal Rule of Evidence 201, "the mere fact a document is a public record does not alone justify taking judicial notice of the document's contents unless the contents are highly indisputable." So, while "the court may take judicial notice that [a party] filed a motion" in a separate proceeding, "it cannot take judicial notice of the facts alleged" if they are "subject to dispute."), with *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 609 (W.D. Tex. 2017) ("Plaintiff asks the Court to take judicial notice of more than 100 pages of documents, consisting primarily of allegations made by other parties in other lawsuits. Those allegations are not 'adjudicative facts' within the meaning of Federal Rule of Evidence 201, nor are they generally known or beyond reasonable dispute. Accordingly, these facts are not appropriate for proof by judicial notice." (citation omitted)).[205]

To be clear, the Court is not concluding that only final adjudications can establish a pattern or practice for *Monell* purposes. However, at the Rule 12(b)(6) stage, the reasoning of the *Merisier* court is well-taken. The Court is not required to accept as true facts alleged in other lawsuits that are subject to dispute. Further, as Defendants note, several of the cited lawsuits were dismissed in favor of the Defendants.

Regarding failure to discipline, Plaintiff references the purported lack of discipline of Deputy Guillot and another deputy whom Plaintiff alleges "had been disciplined at least seven times" and was ultimately demoted.[206] These instances with two deputies do not show a pattern or practice as required by *Monell*, nor are they sufficient to demonstrate deliberate indifference on the part of the Sheriff. "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"[207] In *Pineda v. City of Houston*, the Fifth Circuit held that eleven instances of warrantless entry did not support a pattern of unconstitutional warrantless entry.[208] In *Peterson*, the Fifth Circuit found that twenty-seven complaints of excessive force between 2002 and 2005 were insufficient to

---

[205] *Id.* at *2.
[206] Rec. Doc. 1, ¶¶ 63-65.
[207] *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)(quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).
[208] 291 F.3d 325, 329 (5th Cir. 2002).

constitute a pattern because almost all of the incidents involved small crimes with minor injuries, and the police force was large.[209] Plaintiff's allegations regarding failure to discipline do not come close to satisfying the deliberate indifference standard.

The Court also finds that Plaintiff has failed to plead facts to invoke the single incident exception. As mentioned above, to fall under this "extremely narrow" exception, Plaintiff must show "that the *highly predictable consequence* of a failure [to train or supervise] would result in the specific injury suffered."[210]  This requires not just a failure to train in a specific area but a complete failure to train. No such allegations exist here. Accordingly, Plaintiff's failure to train, supervise, and discipline claim is dismissed.

### 3. Excessive Force

Plaintiff also claims the EBRSO maintains a custom or policy of using excessive and unreasonable force. Specifically, Plaintiff alleges the Sheriff "maintains and endorses policies, customs, and practices that condone and encourage" (a) the unlawful use of excessive force and (b) the "unlawful failure to provide adequate medical attention to citizens who have been seized, detained, or arrested."[211] The standards discussed above are equally applicable in this context. To establish deliberate indifference, "a plaintiff may allege that the municipality had '[n]otice of a pattern of similar violations,' which were 'fairly similar to what ultimately transpired.'"[212] While "[t]he number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies[,]"[213] the Fifth Circuit has held that allegations of twenty-one previous

---

[209] *Peterson*, 588 F.3d at 85152
[210] *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010) (emphasis in original).
[211] Rec. Doc. 1, ¶¶ 154-159, 160-166.
[212] *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).
[213] *Moreno v. City of Dallas*, No. 3:13-cv-4106-B, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015).

incidents involving individuals killed by a police officer was insufficient to establish a pattern.[214] The court reasoned that, "[w]ithout further context surrounding the circumstances, the allegations of prior shootings do not plausibly suggest a pattern of abuses to which the City was deliberately indifferent."[215] The Fifth Circuit concluded that, "[w]ithout some further factual enhancement, [the plaintiff's] complaint 'stops short of the line between possibility and plausibility.'"[216]

In support of this claim, Plaintiff references seven instances of alleged unconstitutional conduct.[217] Defendants move to dismiss this claim, arguing that Plaintiff "fails to allege sufficiently numerous, similar prior incidents to satisfy the requirement of a custom."[218]  Again, Defendants point to the fact that Plaintiff's cited lawsuits are not final adjudications, these lawsuits are not so numerous to establish a pattern, and Plaintiff fails to specify how the alleged facts in those lawsuits involved similar conduct.  Notably, none of the allegations Plaintiff references involved the use of a gun or the infliction of deadly force during a "knock and talk."

Plaintiff counters, arguing that she has raised twenty-five separate incidents where the EBRSO use excessive force.[219]  Plaintiff contends the Sheriff's reliance on the Fifth Circuit's decisions in *Peterson* and *Pineda* is misplaced because those cases involve cities/counties and police departments that are far larger than Baton Rouge, or East Baton

---

[214] *Saenz*, 637 F. App'x at 832.

[215] *Id.*; *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (finding that twenty-seven instances of alleged excessive force was insufficient to establish a pattern in the absence of information providing context, such as the police department's size and total number of arrests made in relevant period).

[216] *Saenz*, 637 F. App'x at 832 (quoting *Twombly*, 550 U.S. at 546, 127 S.Ct. 1955).

[217] Rec. Doc. 1, ¶¶ 56-62.

[218] Rec. Doc. 22-1, p. 18.

[219] *Id.* at ¶¶ 56-65.   Plaintiff notes that "¶ 56 of the Complaint details 19 se¶te uses of excessive force in connection with the protests following the shooting and killing of Alton Sterling."  Rec. Doc. 46, p. 25, n. 27.

Rouge Parish.  Plaintiff cites to the *Peterson* court's note that a court must take into consideration context and comparison to other cities when evaluating pattern or practice for purposes of *Monell*.[220]  Plaintiff also argues that these cases are inapplicable to this motion because they dealt with the summary judgment standard and whether evidence was sufficient to establish a pattern or practice rather than the pleadings standards applicable here.

The Court finds Plaintiff's allegations supporting municipal liability for a purported policy, pattern, or custom of condoning excessive force fall short as pled.  First, as to the nineteen plaintiffs who were protesting the Alton Sterling killing, Plaintiff makes these allegations against "EBRSO and/or BRPD employees."[221]  Any conduct by BRPD officers, over whom Sheriff Gautreaux would have no control, cannot provide a basis for Sheriff Gautreaux's liability.  Second, as noted above, the claims of nineteen plaintiffs named by Plaintiff herein against the EBRSO were dismissed at the Rule 12(b)(6) stage, leaving the number of excessive force incidents alleged at six.  Third, the Court finds assertions of general excessive force insufficient to demonstrate the existence of a widespread pattern or practice of using excessive force under the circumstances alleged here.  In *Harris ex rel. DCJH v. Travis*, another section of this Court addressed a case where a police officer shot and killed a fleeing suspect, and the plaintiff alleged that the East Feliciana Parish Sheriff's Office had a pattern of using excessive force that resulted in injuries to numerous people.[222]  The Court granted the municipal defendant's motion to dismiss the *Monell* excessive force claim because "none of the allegations [the] Plaintiff reference[d] in

---

[220] *Peterson*, 588 F.3d at 851, n. 4.
[221] Rec. Doc. 1, ¶ 56.
[222] No. 202021 WL 4025803, at *12 (M.D. La. July 12, 2021).

support of her claims involve a fleeing suspect or use of a gun to inflict deadly force."[223] The Court continued: "And, even if Plaintiff's allegations were sufficiently similar, Plaintiff fails to allege a sufficient number of prior incidents."[224]

Plaintiff herein argues that "there is no doubt that the twenty-five instances are sufficiently similar because each 'involved injury to a third party.'"[225]  However, that would be true in practically every excessive force case.  Plaintiff has not and cannot allege that the facts of the cases she references are "fairly similar to what ultimately transpired" in the present case.  The Fifth Circuit's reasoning and analysis in *Saenz*, discussed at length above, also warrants dismissal of this claim.

### 4. Failure to Provide Medical Care to Persons Seized, Detained, or Arrested

"The Fourteenth Amendment requires that state officials not disregard the basic human needs of pretrial detainees, including medical care."[226] "[W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an episodic act or omission case."[227] Here, the relevant question is "whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge, and intentionality is no longer presumed."[228] To find this violation, the official must have "subjective knowledge of a substantial risk of serious harm to a pretrial

---

[223] *Id.*

[224] *Id.* (citing *Pineda*, 291 F.3d at 329 (finding 11 instances of warrantless entry insufficient); *Peterson*, 588 F.3d at 851 (finding 27 complaints of excessive force in three years insufficient); *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 n.14 (5th Cir. 2018) ("**Though *Peterson* and *Pineda* were decided on summary judgment, they fairly suggest that a plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved.**")).

[225] Rec. Doc. 46, p. 26, n.29.

[226] *Reed ex rel. Estate of Henson*, 440 F. App'x 341, 343 (5th Cir. 2011)(internal quotation marks and citation omitted).

[227] *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (internal quotation marks omitted).

[228] *Reed ex rel. Estate of Henson v. Wichita County*, 795 F.3d 456, 464 (5th Cir. 2015) (internal quotation marks omitted) (citing *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996)).

detainee but responded with deliberate indifference to that risk."[229] Generally, "[d]eliberate indifference is shown when the 'official knows of and disregards an excessive risk to inmate health or safety, [and] "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[230] Deliberate indifference will exist where a plaintiff shows that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[231] Thus, for purposes of Rule 12(b)(6), the factual allegations must set forth no more than such a minimal case.

As discussed above, this is an episodic acts or omission case.  To establish municipal liability in this context, "the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights."[232]  The test for this form of indifference "considers not only what the policy maker actually knew, but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights."[233]

Plaintiff alleges Sheriff Gautreaux has a "long-established policy, custom, practice, and pattern of … failing to render medical care to citizens who have been seized, detained, or arrested."[234] Plaintiff references nine cases filed against the Sheriff and

---

[229] *Hare*, 74 F.3d at 650.
[230] *Reed*, 440 F. App'x at 343 (quoting *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002)).
[231] *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).
[232] *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997).
[233] *Corley v. Prator*, 290 F. App'x 749, 750 (5th Cir. 2008) (relying on *Lawson v. Dallas Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002)).
[234] Rec. Doc. 1, ¶ 4(e).

others from 2013 to 2020.[235]   Defendants move for dismissal of this claim, arguing that nine instances over this span of time cannot demonstrate a widespread pattern or practice to implicate *Monell* liability.   Defendants argue that, of the nine incidents raised, six involved inmates/detainees housed at the EBRP prison.   The other three incidents did not involve individuals that suffered death due to a failure to render medical care.   Further, Defendants claim none of the cases cited by Plaintiff resulted in an adjudicated finding of a constitutional violation on the part of the EBRSO.

Plaintiff responds arguing that, because "the Fifth Circuit has held that for the purposes of analyzing a denial of medical care claim, there is no 'reason to carve out a separate standard for arrestees, a subset of pretrial detainees[,]'"[236] it follows that "there is also no reason to carve out a separate standard for establishing a policy under *Monell*."[237] However, making this jump as Plaintiff suggests ignores the requirement of demonstrating, through pleadings, a pattern, practice, policy, or custom as required by *Monell*.   In *Nerren*, the Fifth Circuit explicitly held that arrestees are a subset of pretrial detainees and are thus entitled to the same rights, including the right to medical care, under the Fourteenth Amendment. Even so, nothing in *Nerren* erodes the municipal liability standard set forth in *Monell*, and Plaintiff cites no authority for this suggestion. Further, nothing in *Nerren* indicates that all cases alleging failure to provide medical care, no matter how factually dissimilar, will constitute a pattern, practice, policy, or custom under *Monell*.   Plaintiff has failed to offer a single case of alleged denial of medical care

---

[235] Rec. Doc. 1, ¶¶ 67-76, 160-166.
[236] Rec. Doc. 46, p. 27 (quoting *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472–73 (5th Cir. 1996)).
[237] *Id.*

under facts similar to those alleged in this case for purposes of establishing *Monell* liability on this claim.

Plaintiff also refers to "the voluminous instances … in which an EBRSO employee was deliberately indifferent toward the medical needs of an arrestee…."[238] The Court finds that nine instances over the course of seven years is hardly "voluminous," and Plaintiff offers no jurisprudence to support this contention. Accordingly, the Court finds that Plaintiff has failed to plead a persistent, widespread pattern, policy, custom, or practice by the EBRSO in failing to render emergency medical care to arrestees/pre-trial detainees under circumstances similar to the facts of this case.  This claim is dismissed.

### E.    State Law Claims

#### 1.    Excessive Force, Assault, and Battery

"The Fifth Circuit has stated that Louisiana's excessive force tort mirrors its federal constitutional counterpart."[239] "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force."[240]

Because Plaintiff's assault, battery, and excessive force claims are essentially state law corollaries of her § 1983 claims for excessive force, the foregoing analysis of Plaintiff's § 1983 excessive force claims against Deputy Guillot in his individual capacity also applies to Plaintiff's state law claims for excessive force, assault, and battery. Plaintiff

---

[238] *Id.* at p. 28.
[239] *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citing *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009)).
[240] *Id.* at 515 (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. App. 5 Cir. 1982)); *see also Taylor v. United States*, No. 89-4332, 1991 WL 280066, at *11 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

has stated a viable claim against Deputy Guillot for excessive force, assault, and battery; accordingly, Defendants' motions as to these claims against Deputy Guillot is denied.

    2.   <u>Abuse of Process</u>

An abuse of process occurs when "the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to obtain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect."[241] To prevail on an abuse of process claim, a plaintiff must prove: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding."[242]

"The first element, that of ulterior purpose, is similar to the concept of 'malice,' but is a much more demanding test which would not be met by a showing of lack of knowledge or other technical types of malice, but which is only met when the officer is acting for a specific purpose not authorized by law."[243] "The second criteria, improper use of process, refers to a failure to comply with the proper procedures or rules set out by law for conducting official actions."[244]  Thus, Plaintiff must properly allege that there was malice and improper use of process.

Plaintiff alleges that the Defendant officers "unlawfully search[ed] the apartment and seize[d], detain[ed], and/or arrest[ed] its occupants without a warrant."[245]  Defendants move to dismiss this claim, arguing that Plaintiff has not alleged that they abused any

---

[241] *Hebert v. La. Licensed Pro. Vocational Rehab. Counselors*, 07-610 (La. App. 3 Cir. 3/4/09), 4 So. 3d 1002, 1009 (quotations and citation omitted).
[242] *Id.*
[243] *Taylor v. State*, 617 So. 2d 1198, 1205 (La. App. 3d Cir. 1993).
[244] *Id.* at 1205-06.
[245] Rec. Doc. 1, ¶ 213.

legal or court-related process following the alleged unlawful search, seizure, and detention.[246]

      Plaintiff counters that she has properly alleged both criteria set forth above; she alleges that the Defendant officers acted with an ulterior motive,[247] and she alleges that the "defendant officers executed willful acts in the use of process that was not proper" by "refusing to identify themselves as law enforcement officers when arriving at the apartment, concealing their identities . . ., aggressively banging on the apartment door…, and refusing to identify themselves as law enforcement officers when asked to do so by the apartment's occupants."[248]  Plaintiff likens the facts of this case to those in *Singleton v. Cannizzaro*, wherein the Eastern District of Louisiana held that the plaintiffs' allegations "that the Defendants flouted the investigative subpoena process" by serving allegedly fake subpoenas "with the ulterior purpose of avoiding judicial oversight" was a plausible abuse of process claim.[249] Plaintiff claims the facts of this case are "squarely in line" with those in *Singleton*; Plaintiff is mistaken.

      This Court addressed a similar abuse of process claim in *Swoboda v. Manders*, where the plaintiff alleged that the police "did not conduct an independent investigation into Mr. Swoboda and issued a warrant based solely on Defendants' misrepresentations in the affidavit for arrest."[250] The "plaintiff alleged the Defendants' malicious purpose in trump[ing] up supposed probable cause and push[ing] law enforcement and the district attorney to arrest and prosecute Mr. Swoboda as retribution" related to prior conduct in a

---

[246] *See id.* at ¶¶ 209-218.
[247] *Id.* at ¶¶ 214-215.
[248] *Id.* at ¶ 217.
[249] 372 F.Supp.3d 389, 424 (E.D. La. 2019).
[250] No. 14-19-EWD, 2016 WL1611477, at *4 (M.D. La. Apr. 21, 2016)(quotation marks and footnotes omitted).

different lawsuit.[251]  The Court rejected the plaintiff's claim, noting: "Importantly, '[t]he tort of abuse of process involves the malicious use of a legal process *after* the process has been instituted.'"[252] The Court found that the plaintiff had "not alleged Defendants abused any court-related process after he was arrested. Under such circumstances, Plaintiff has not alleged sufficient facts to state a claim for abuse of process."[253]

The facts alleged by Plaintiff herein are far more similar to those in *Swoboda* than the facts in *Singleton*, where the Fifth Circuit held that absolute immunity did not extend to prosecutors who created and used fake subpoenas to attempt to pressure crime victims and witnesses to meet with them privately and share information outside the court.[254] Here, Plaintiff alleges the officers' failure to identify themselves, their warrantless entry without probable cause, and their use of excessive (deadly) force in seizing Willis constitutes an abuse of process.   But the Fifth Circuit has made expressly clear the criminal process was not instituted at that time.  In *Duboue v. City of New Orleans*, the Fifth Circuit reversed a jury award of $25,000 for abuse of process against a police officer because, although he instituted the process whereby the plaintiff had been arrested, he did nothing further in carrying the process toward its conclusion.[255]   "Therefore, [that

---

[251] *Id.* (alterations in original)(quotation marks and footnotes omitted).
[252] *Id.* (quoting *Duboue v. City of New Orleans*, 909 F.2d 129, 132 (5th Cir. 1990); *see also, Laitram Machinery, Inc. v. Carnitech A/S*, 884 F.Supp. 1074, 1086 (E.D. La. 1995) ("Because [plaintiff's] abuse of process claim involves [defendant's] institution of the lawsuit and not anything done... *after* the lawsuit was instituted, [defendant] is entitled to summary judgment as a matter of law on the abuse of process claim under *Duboue*.")(emphasis in original); *Stark v. Eunice Superette, Inc.*, 457 So. 2d 291, 294 (La. App. 3 Cir. 1984) (affirming trial court's ruling in favor of defendant finding no abuse of process where "[n]owhere is there any suggestion that defendant's owner or employees misused the criminal process once it was instituted.")).
[253] *Id.* (citing *Duboue*, 909 F.2d at 132 (although defendant improperly arrested plaintiff "out of anger," defendant was not liable for abuse of process because, although he "instituted the process," defendant "did nothing further in carrying it to its conclusion.")).
[254] *Singleton*, 956 F.3d at 783–84.
[255] *Duboue*, 909 F.2d at 132.

officer] can not [sic] be said to have abused the process after its institution."[256] The reasoning in *Duboue* forecloses Plaintiff's abuse of process claim, and it is dismissed.

### 3.   Negligence

Louisiana utilizes the duty/risk analysis to evaluate negligence claims.[257] "The duty/risk analysis consists of the following factors: (1) did the defendant owe a duty to the plaintiff; (2) was the duty breached; (3) was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred; (4) was the risk, and harm caused, within the scope of protection afforded by the duty breached; and (5) actual damage."[258] Additionally, "under Louisiana law, a police officer has a duty to act reasonably under the totality of the circumstances."[259]

The Complaint contains detailed allegations of the negligence elements.[260] Specifically, Plaintiff alleges that the Defendant officers are liable generally under Louisiana Civil Code Articles 2315 and 2316, which provide respectively that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it[;]" and "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."[261] Plaintiff also alleges that the Defendant officers owed a "specific duty under Louisiana Code of Criminal Procedure Article 218 to inform any person to be arrested or detained of the

---

[256] *Id.*

[257] *Causer v. Ard*, No. 18-779-SDD-RLB, 2019 WL 3849155, at *7 (M.D. La. Aug. 15, 2019).

[258] *Id.* (citing *Williams v. Domino's Pizza, Inc.*, No. 00-1043, 2001 WL 6724, at *4 (E.D. La. Jan. 2, 2001); *Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991); *see also Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 698 (5th Cir. 2011)).

[259] *Perron v. Travis*, No. 20-221, 2021 WL 1187077, at *8 (M.D. La. Mar. 29, 2021) (citing *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 10 (La. 11/30/94), 646 So. 2d 318, 325).

[260] Rec. Doc. 1, ¶¶ 175-200.

[261] *Id.* at ¶¶ 176-177 (alterations in original).

officer's intentions, authority, and the cause of the arrest or detention."[262]  Plaintiff further alleges the Defendant officers owed a "specific duty under Louisiana Code of Criminal Procedure Article 220 to only use reasonable force in effecting any arrest or detention or in overcoming any resistance or threatened resistance of a person being arrested or detained."[263]  Plaintiff alleges sixteen instances of the officers' breach of these duties.[264] Plaintiff also alleges in detail that the breaches were the proximate cause of the damages suffered.

Defendants acknowledge that, under Louisiana law, a "police officer has a duty to act reasonably under the totality of the circumstances."[265]  Further, "[p]olice officers have the duty of maintaining peace and order, preventing and detecting crime, and enforcing laws."[266]  Defendants, however, move for dismissal of Plaintiff's negligence claim on the basis that the officers' conduct was reasonable under the law and because police are not necessarily required to identify themselves when investigating criminal activity. Defendants' arguments fall short at the pleadings stage.

Whether the Defendant officers' conduct was reasonable is a factual dispute that cannot be resolved at the Rule 12(b)(6) stage.  It is enough that Plaintiff alleged how and why she asserts that the conduct was unreasonable.  Likewise, while it is true that officers do not always have to identify themselves when investigating criminal activity, whether they were required to under the circumstances alleged in this case is a fact question better

---

[262] *Id.* at ¶ 178.
[263] *Id.* at ¶ 179.
[264] *Id.* at ¶ 196.
[265] Rec. Doc. 22-1, p. 31 (quoting *Elphage*, 969 F. Supp. 2d 493, 516 (citing *Mathieu*, 646 So. 2d at 322)).
[266] *Id.* (quoting *Brooks v. City of Jennings*, 944 So. 2d 768, 773 (La. App. 3 Cir. 11/22/06)).

left for summary judgment or trial.  The Court finds that Plaintiff has successfully pled Louisiana negligence claims.

    4.   <u>Violation of Due Process Pursuant to La. Cons. Art. I, § 2</u>

Plaintiff alleges a due process violation by the Defendants under the Louisiana Constitution.  Article I, Section 2 of the Louisiana Constitution, like its federal counterpart, provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law."  This Court has previously recognized, "[a]s '[t]he Louisiana constitutional clauses are "substantially equivalent" to federal clauses [ ], courts "apply the same analysis to [a] plaintiff['s] state and federal claims."'"[267]  Thus, the Fourteenth Amendment due process analysis discussed above under § 1983 applies to Plaintiff's due process claim under the Louisiana Constitution, and is likewise adequately alleged.

Defendants moved to dismiss, arguing that they are entitled to State Law Discretionary Immunity as described in Louisiana Revised Statutes 9:2798.1.  However, this immunity is unavailable for (1) acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.[268]  Plaintiff clearly alleges facts that

---

[267]*North Atlantic Security Company v. Blache*, No. 19-379-EWD, 2020 WL 6588946, at *19 (M.D. La. Nov. 10, 2020)(quoting *Miller v. Summit Health and Rehab Services, Inc.*, No. 16-1066, 2017 WL 2625123, at *6 (W.D. La. June 16, 2017)(citing *Powers v. U.S.*, 783 F.3d 570, 577 (5th Cir. 2015) (citing *Board of Com'rs of Orleans Levee Dist. v. Department of Natural Resources v. Dep't of Natural Res.*, 496 So.2d 281, 291 (La. 1986)).  *See also N.S. v. City of Alexandria*, No. 09-0779, 2014 WL 4274108, at *5 (W.D. La. Aug. 28, 2014) ("In the words of the Louisiana Supreme Court, "[u]nlike Louisiana's provision on equal protection which is distinct from that provided in the Fourteenth Amendment, our due process guarantee in La. Const. Art. I, § 2 does not vary from the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Progressive Security Ins. Co. v. Foster*, 711 So.2d 675, 688 (La. 1998); *see also Dupree v. Belton*, No. 10–1592, 2013 WL 701068, at *6 (W.D. La. Feb. 26, 2013). Thus, our analysis of Plaintiffs' due process claims under the Fourteenth Amendment to the federal Constitution also applies to the Plaintiffs' due process claim under Article I, § 2 of the Louisiana Constitution.")).
[268] La. R.S. 9:2798.1 (C).

would fall into the second category of conduct.  Thus, Defendants are not entitled to statutory discretionary immunity at this stage in litigation.  The motion to dismiss this claim is denied.

     5.   <u>Vicarious Liability</u>

Under Louisiana Civil Code article 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment."[269] Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."[270] The Louisiana Supreme Court has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[271]

Plaintiff has alleged that Deputy Guillot and the other officers were acting in the course and scope of their employment during this incident.[272]  Because the Court has found that Plaintiff stated a claim against Deputy Guillot for assault, battery, and excessive force and a claim for negligence under Louisiana law, there is a potentially culpable employee for which Sheriff Gautreaux could be held vicariously liable. Accordingly, the Sheriff's motion will be denied as to this claim.

---

[269] *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000).
[270] *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009) (citing *Brasseaux*, 752 So. 2d at 820); *see also Bussey v. Dillard Dep't Stores, Inc.*, 984 So. 2d 781, 784 (La. App. 1 Cir. 2008)(citaitons omitted) ("[V]icarious liability [under art. 2320] applies to law enforcement employers as well.").
[271] *Brasseaux*, 752 So. 2d at 820 (internal citations omitted).
[272] Rec. Doc. 1, ¶¶ 42, 224.

III.     **CONCLUSION**

Accordingly, for the foregoing reasons, Defendants' *Motion to Dismiss*[273] is **GRANTED IN PART** and **DENIED IN PART.**  The motion is DENIED as to the following federal claims:   individual capacity claims against Deputy Guillot for excessive force, unlawful seizure, failure to render medical care, and punitive damages. The motion is GRANTED as to all *Monell* claims asserted against Sheriff Gautreaux/EBRSO for inadequate screening, negligent hiring, excessive force, and failure to provide medical care.   The Motion is DENIED as to the following state law claims:   excessive force, assault, battery, negligence, Louisiana Constitution Due Process violation, and vicarious liability.   The motion is GRANTED as to the abuse of process claim, and this claim is dismissed with prejudice as amendment would be futile as a matter of law. All other claims are dismissed without prejudice, and Plaintiff will be permitted to amend her Complaint. The Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires."[274] Moreover, "courts should ordinarily grant a plaintiff at least one opportunity amend before dismissing a complaint with prejudice for failure to state a claim."[275]  That being said, Plaintiff is cautioned that any amendments must comport with this Court's ruling, and Plaintiff does not have leave to add new parties or claims; she may only amend to cure the deficiencies set forth herein, if possible.[276]

---

[273] Rec. Doc. 22.
[274] Fed. R. Civ. P. 15(a)(2).
[275] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)(citing *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)).
[276] If Plaintiff wishes to amend more broadly, she must file a motion under the applicable Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  25th  day of March, 2024.


_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**