# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DYRONNET KADOR O/B/O HER MINOR CHILD, DYAUGNHA WILLIS | CIVIL ACTION |
| versus | |
| SHERIFF SIDNEY J. GAUTREAUX, III, ET AL. | 23-cv-11-SDD-RLB |

## CONSOLIDATED WITH

| | |
|---|---|
| TRINELLE WILLIS, ET AL. | CIVIL ACTION |
| versus | |
| SID GAUTREAUX, ET AL. | 23-cv-50-SDD-RLB |

## <u>RULING</u>

This matter comes before the Court on the *Motion to Dismiss*[1] filed by Defendants Sheriff Sid J. Gautreaux, III, in his official capacity as Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux"), Deputy Eno Guillot, in his official capacity ("Deputy Guillot") (collectively, the "Sheriff Defendants" or "Defendants"). Plaintiffs, Trinelle Willis ("Willis") and Leonard Wilson ("Wilson"), individually and on behalf of their minor children, S'Rhen Wilson and Jordan Wilson (collectively "Plaintiffs") filed an *Opposition*,[2] to which the Sheriff Defendants filed a *Reply*.[3] For the reasons set forth below, Defendants' Motion will be granted in part and denied in part.

---

[1] Rec. Doc. 86.   The Motion to Dismiss at Rec. Doc. 86 appears duplicative of the Motion to Dismiss at Rec. Doc. 80.  Because Rec. Doc. 86 is the most recent motion, the Court will refer to this Motion as the operative Motion to Dismiss.

[2] Rec. Doc. 91.

[3] Rec. Doc. 93.

I.    **FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs originally filed their Petition in the 19th Judicial District Court for the State of Louisiana, asserting federal and state claims arising out of an incident that occurred on January 8, 2022, when deputies from the East Baton Rouge Sheriff's Office ("EBRSO") and Baton Rouge Police Department ("BRPD") officers went to the Plaintiffs' apartment looking for Keaughn ("Keaughn") Willis. During the course of events, Deaughn ("Deaughn") Willis, Keaughn's twin brother, was shot and killed.  The matter was removed to this Court and consolidated with a related suit filed on behalf of Deaughn Willis's minor child as the foregoing caption reflects.

Plaintiffs allege the following facts. On the afternoon of January 8, 2022, a group of EBRSO deputies and BRPD officers arrived at Plaintiffs' apartment in Baton Rouge, purportedly for the purpose of arresting Keaughn.[4] The officers were dispatched to the apartment for a well check for a runaway, and they surrounded Plaintiffs' third-floor apartment.[5]

The group of officers positioned themselves out of view of the apartment's peephole and blocked all possible exits.[6] The exact number and identity of the officers and deputies is unknown, but there were enough armed officers to constitute a hostile approach.[7] Just outside the door was Deputy Eno Guillot ("Deputy Guillot"), previously trained as a sniper, who was armed with an automatic assault rifle drawn and in shooting position.[8] Deputy

---

[4] Rec. Doc. 76, ¶ 25.
[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶ 26.
[8] *Id.* at ¶ 25.

Jane Doe and Officer John Doe were also just outside the door.[9]

Willis, Wilson, their minor children, and Deaughn, age 25, were all in the apartment that morning.[10] The "posse" made no attempt to knock on the door and did not announce their presence; rather, they approached heavily armed and positioned themselves outside the door's peephole so they could not be seen by those inside the apartment.[11] Without warning, Deputy John Doe banged loudly against the door with his fist five times but still said nothing.[12]

The occupants inside asked who was at the door, but they were met with silence. Plaintiffs believed there was potential danger outside, and the officers "could hear the occupants on the inside asking them to announce themselves."[13] Deputy John Doe banged on the door a second time and allegedly joked to fellow officers that the family "were going to F—ing know it is the police."[14]

Plaintiffs were still unaware of who was at their door; in fact, Willis dialed 911 to report the disturbance.[15] Deaughn "proceed[ed] to the door and cautiously crack[ed] open the door, not knowing who was there, and immediately [began] to close the door."[16] Plaintiffs allege Deaughn did not pose a threat to anybody or provoke this interaction.[17]

Nevertheless, while the door was partially open, "without any warning, Eno Guillot fire[d] shots and Deaughn cried out that he had been shot."[18] Plaintiffs allege that there

---

[9] *Id.* at ¶ 28.
[10] *Id.* at ¶ 27.
[11] *Id.* at ¶¶ 25-27.
[12] *Id.* at ¶ 28.
[13] *Id.*
[14] *Id.* at ¶¶ 28-29.
[15] *Id.* at ¶ 29.
[16] *Id.* at ¶ 31.
[17] *Id.*
[18] *Id.*

was neither probable cause nor a warrant for this intrusion.[19] Nevertheless, Deputy Guillot "shot through the door and killed Deaughn," despite the occupants requesting from inside the apartment for the officers to identify themselves.[20] By firing at least three bullets into plaintiff's door, Deputy Guillot had no way of knowing how many people might be killed.[21] Ultimately, Plaintiffs allege that Deaughn posed no threat to anyone and had not committed any crime when he was fatally shot by Deputy Guillot.[22] Plaintiffs claim Deputy Guillot's actions during this encounter were "intentional," "willful," "outrageous," and "reckless."[23]

As Deaughn lay wounded, Willis, a trained nurse, began administering first aid to her son while communicating with a 911 operator.[24] Instead of calling for emergency medical care after being informed of the situation, the 911 operator informed Willis that each of the individuals inside the house needed "to come out with their hands up."[25] Willis complied and "lef[t] her son there to ultimately die without medical attention."[26] Despite Willis's pleas, officers refused to get Deaughn medical attention.[27] Willis was arrested, handcuffed, and placed in the back of a Sheriff's vehicle.[28]

Wilson was also ordered to come out with his hands up, forcing him to leave his two minor children behind in the apartment with their dying brother.[29] It was clear that

---

[19] *Id.*
[20] *Id.* at ¶ 2.
[21] *Id.* at ¶ 53.
[22] *Id.* at ¶¶ 51-53.
[23] *Id.* at ¶¶ 57, 80.
[24] *Id.* at ¶ 32.
[25] *Id.* at ¶¶ 3, 34.
[26] *Id.* at ¶ 34.
[27] *Id.* at ¶ 35.
[28] *Id.*
[29] *Id.* at ¶ 34.

Wilson was also arrested when he was confined to his vehicle and ordered not to leave.[30] The minor children, ages 15 and 10, were also ordered to exit the apartment with their hands up; they were arrested without cause and ordered to sit in Wilson's vehicle.[31] As each individual exited, the officers and deputies pointed guns and assault rifles at them.[32] The officers did not have a warrant for these arrests.[33] Each Plaintiff had to walk past Deaughn, bleeding and dying on the floor, to exit the apartment.[34]

As the officers entered the apartment, they searched the home but did not render any aid to Deaughn.[35] While in the apartment, law enforcement seized the Plaintiffs' cell phones, and the phones had not been returned as of the date the Petition was filed.[36] Defendants never produced a search warrant for the phones.[37]

Plaintiffs filed this lawsuit asserting numerous claims under federal and state law, including: Section 1983 *Monell* claims against Sheriff Gautreaux for alleged unconstitutional search and seizure policy, improper hiring, retention, supervision, and discipline of Deputy Guillot, failure to train and/or deficient training, and ratification of Deputy Guillot's pattern of misconduct; *Monell* claims against Deputy Guillot in his official capacity for excessive force; state law tort claims against the Defendants for excessive force, false arrest, negligent hiring, supervision and training; intentional and negligent infliction of emotional distress; general negligence; abuse of process; assault and battery, and vicarious liability. Plaintiffs also seek punitive damages.

---

[30] *Id.* at ¶ 35.
[31] *Id.* at ¶¶ 34-35.
[32] *Id.* at ¶ 34.
[33] *Id.*
[34] *Id.*
[35] *Id.* at ¶¶ 35-36.
[36] *Id.* at ¶ 36.
[37] *Id.*

On March 10, 2023, the Sheriff Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[38] The Willis-Wilson Plaintiffs filed a Memorandum in Opposition,[39] to which the Sheriff Defendants filed a Reply.[40] Over a year after the Motion was filed, the Plaintiffs filed a Motion for Leave to Amend the Complaint on March 26, 2024.[41] The Court then denied the Sheriff Defendants' Motion to Dismiss without prejudice to their right to move to reinstate the Motion to Dismiss if the Motion for Leave to Amend the Complaint was denied.[42] The Court subsequently granted Plaintiffs' Motion for Leave, and they filed the First Amended Complaint into the record on April 23, 2024.[43]  Thereafter, the Defendants filed the motion presently before the Court.

## II.    LAW AND ANALYSIS

### A.    Rule 12(b)(6) Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[44] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[45] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[46]

---

[38] Rec. Doc. 23.
[39] Rec. Doc. 49.
[40] Rec. Doc. 56.
[41] Rec. Doc. 71.
[42] Rec. Doc. 72.
[43] Rec. Doc. 75.
[44] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[45] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[46] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[47] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[48] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[50] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[51] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[52]

## B.    Waiver/Abandonment of Claims

Defendant moves to dismiss, *inter alia*, the following claims:  42 U.S.C. § 1983 *Monell* claims against the Sheriff, including claims for unconstitutional policies, improper hiring, failure to properly train and supervise, and ratification; § 1983 claims against Deputy Guillot in his official capacity; claims for punitive damages; State law claim for

---

[47] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[48] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[49] *Id*.
[50] *Id*.
[51] *Taha v. William Marsh Rice Univ*., 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004)).
[52] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

abuse of process; and the State law claim against the Sheriff for negligent hiring, supervision, and training. Plaintiffs failed to argue against dismissal of these claims in their Opposition. This Court has held on numerous occasions that the "failure to brief an argument in the district court waives that argument in that court,"[53] and the "failure to oppose the substance of an argument is a waiver and dismissal is proper on these grounds alone."[54] Accordingly, pursuant to Middle District Local Rule 7(f) and applicable jurisprudence, these claims are deemed abandoned, and they are dismissed with prejudice.

Plaintiffs contend they intended to sue Deputy Guillot in his individual capacity under Section 1983 and that suing him in his official capacity was a "clerical error."[55] Plaintiffs ask the Court for leave to amend to cure this error, arguing that Guillot was sued in his individual capacity in the original complaint, so there is no prejudice to him as he has been on notice of this claim since the inception of the lawsuit.[56]

The Court agrees.  First, Guillot cannot show any prejudice to being sued in his individual capacity, and he is defending an individual capacity claim in the consolidated matter arising out of the same incident.  Second, The Fifth Circuit has stated that "Louisiana's excessive force tort mirrors its federal constitutional counterpart."[57] "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement

---

[53]  *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F.Supp.3d 620, 634 (M.D. La. 2018).
[54] *Bourgeois v. Walmart Inc.*, 2020 WL 1161928, *3 (M.D. La. 2020).
[55] Rec. Doc. 91, p. 5.
[56] *Id.*
[57] *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515–16 (M.D. La. 2013) (citing *Deville v. Marcantel*, 567 F.3d 156, 172–73 (5th Cir. 2009)).

officer acted with unreasonable or excessive force."[58]  Because Plaintiffs' assault, battery, and excessive force claims, which have not been waived or abandoned, are essentially state law corollaries of would-be § 1983 claims for excessive force, the Court's findings and analysis as to these claims would be the same. Accordingly, Plaintiffs will be granted leave to amend for the sole purpose of correcting this "clerical error."  Further, because the Court will allow this amendment to cure the clerical error, and because the Fourth Amendment analysis applies in the same manner to the state law corollaries of excessive force, unlawful seizure, false arrest, assault, and battery, the Court's analysis and conclusions would apply equally to any Section 1983 individual capacity asserted against Deputy Guillot if Plaintiffs amend their complaint to correct this clerical error.

### C.    Qualified Immunity

Deputy Guillot has asserted the affirmative defense of qualified immunity. The state of Louisiana "applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the Supreme Court of the United States to recognize a qualified good faith immunity for state officers under § 1983."[59] The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably."[60] In striking this balance, qualified immunity shields "government officials performing discretionary

---

[58] *Id.* at 515 (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. App. 5 Cir. 1982)); *see also Taylor v. United States*, 1991 WL 280066 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").
[59] *Sanders v. CEOC LLC*, 586 F.Supp.3d 519, 527 (citing *Moresi v. State*, 567 So.2d 1081, 1093 (La. 1990)).
[60] *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[61]

When a public official asserts the defense of qualified immunity, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense.[62] To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[63] The court has discretion to decide these prongs in any order.[64]

At the 12(b)(6) stage, the court must determine whether, taking the alleged facts in the light most favorable to the plaintiff, the plaintiff has alleged that the defendant's conduct violated a constitutional right.[65] For the second step, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[66] "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."[67] If a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident."[68]

An official's conduct is not objectively unreasonable "unless all reasonable officials

---

[61] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

[62] *Jackson v. Texas*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

[63] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

[64] *Jackson*, 959 F.3d at 200.

[65] *Morgan*, 659 F.3d at 384; *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

[66] *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alteration in original).

[67] *Jackson*, 959 F.3d at 201 (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)).

[68] *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001).

in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."[69] When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[70] Precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate."[71]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'"[72] The plaintiff's must "assert facts which, if true, would overcome the defense of qualified immunity."[73] A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[74]

Plaintiffs have sued Deputy Guillot for excessive force and false arrest/unlawful seizure under the Louisiana State Constitution. Deputy Guillot has asserted the defense of qualified immunity under *Moresi v. State*. The Court notes that "Louisiana applies the same standards to analyze claims of false arrest, excessive force, and negligent training or supervision as the standards utilized under federal law."[75] Additionally, Louisiana

---

[69] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[70] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).
[71] *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074.
[72] *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).
[73] *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014).
[74] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[75] *Sanders v. CEOC L.L.C.*, 586 F.Supp.3d 519, 527 (W.D. La. 2022)(citing *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997), *rehearing denied* 146 F.3d 282, *cert. denied*, 525 U.S. 1054, 119 S.Ct. 618, 142 L.Ed.2d 557 (1998)).

applies qualified immunity principles to state constitutional law claims based on the same factors that compelled the Supreme Court of the United States to recognize a qualified good faith immunity for state officers under § 1983.[76] Accordingly, the Court will apply Fourth Amendment jurisprudence to Plaintiffs' state law excessive force, false arrest/unlawful seizure, assault, and battery claims.

### D.    Excessive Force

"To prevail on a Fourth Amendment excessive-force claim, a plaintiff must establish: (1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable."[77]  "To gauge the objective reasonableness of the force, '[the Court] must balance the amount of force used against the need for force.'"[78]

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *See Tennessee v. Garner*, 471 U.S. at 8–9, 105 S. Ct. at 1699–1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").[79]

"That second factor is the most important: [The Court] must determine whether [Plaintiffs] 'posed an immediate threat to the safety of the officers or others.'"[80] "The '[u]se of deadly

---

[76] *Moresi v. State*, 567 So.2d 1081, 1093 (La. 1990).

[77] *Carnaby*, 636 F.3d at 187 (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

[78] *Id*. at 187–88 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (internal quotation marks and citation omitted)).

[79] *Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) ("This balancing test 'requires careful attention to the facts and circumstances of each particular case.'" (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865)).

[80] *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others.'"[81] In other words, "[t]he use of deadly force may be proper regardless of an officer's negligence if, at the moment of the shooting, he was trying to prevent serious injury or death."[82]

"[T]he proper inquiry is an objective one."[83] The "Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent."[84] That is, "[t]he 'reasonableness inquiry is objective: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"[85] Thus, an officer's "subjective intent is irrelevant to the reasonableness determination."[86]

Additionally, the Court's "inquiry into reasonableness is fact-specific and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"[87] The Court must evaluate such instances as "'a reasonable officer on the scene,' and [ ] 'allow[ ] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[88] The Court "cannot allow the 'theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.'"[89]

---

[81] *Carnaby*, 636 F.3d at 188 (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)).
[82] *Id*. (citations omitted).
[83] *Hudspeth*, 270 F. App'x at 337 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).
[84] *Id*. (quoting *Devenpeck*, 543 U.S. at 153, 125 S.Ct. 588).
[85] *Davis v. Romer*, 600 F. App'x 926, 931 (5th Cir. 2015) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).
[86] *Id*.
[87] *Carnaby*, 636 F.3d at 188 (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865).
[88] *Flores*, 381 F.3d at 399 (quoting *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865).
[89] *Malbrough*, 814 F. App'x at 806 (quoting *Stroik v. Ponseti*, 35 F.3d 155, 158 (5th Cir. 1994)).

Defendants maintain Plaintiffs have failed to state a claim for excessive force and, further, that Plaintiffs have failed to overcome the qualified immunity defense offered by Deputy Guillot. First, Defendants contend Plaintiffs fail to satisfy the first element because they do not allege any injuries to themselves; rather, they only alleged that they have suffered "mental and emotional injuries as a result of witnessing Deaughn Willis being shot at by Deputy Eno Guillot."[90] Defendants argue Plaintiffs lack standing to assert any claims for the alleged use of force against Deaughn under La. C.C. art. 2315.2 and La. C.C. art. 2315.1 since Deaughn's daughter rightfully asserted those claims.[91] Further, Defendants claim Plaintiffs failed to assert bystander claims under La. C.C. art. 2315.6; however, Plaintiffs *did* assert this claim in their First Amended Complaint.[92]

Second, Defendants argue Plaintiffs cannot show that the officers' actions were unreasonable under the circumstances. Defendants cite to Supreme Court and Fifth Circuit jurisprudence holding that police officers may "take such steps as [a]re reasonably necessary to protect their personal safety and maintain the status quo during the couse of

---

[90] Rec. Doc. 76, ¶ 33.
[91] In Plaintiffs' original Complaint, they did assert claims on behalf of Deaughn; it appears Plaintiffs dropped these claims in the Amended Complaint. To the extent any allegations in the Amended Complaint may be read as claims brought on behalf of Deaughn, those claims are dismissed for lack of standing. Under Louisiana Civil Code Articles 2315.1 and 2315.2, the right of a survival or wrongful death action is afforded to four exclusive categories of survivors. However, the statutes do not allow for all classes of survivors to bring actions. Rather, the existence of a person qualifying within a higher class precludes a person in a lower class from filing suit. *See Kumasi v. Cochran*, No. 2015 WL 4429192 at *3 (M.D. La. July 17, 2015). The primary category under both 2315.1 and 2315.2 includes the surviving spouse and/or children of the decedent. Thus, pursuant to Articles 2315.1 and 2315.2, surviving siblings may only recover in the event that the decedent was not survived by a spouse, child, or parent. *Id.* And further, as to parents, the Louisiana Supreme Court holds, "[w]hen a tort victim is survived by a child, the parents of the tort victim have no right to recover for the damages sustained by the victim or for their own damages for the victim's wrongful death." *Jenkins v. Mangano Corp.*, 2000-0790 (La. 11/28/00), 774 So. 2d 101, 105. *See also, Melancon v. Louisiana*, No. 11-1794, 2013 WL 1288702, at *2 (W.D. La. Mar. 26, 2013) (holding that the decedent's mother had no standing to pursue her claims because he had children). In the consolidated case of *Kador v. Gautreaux*, Plaintiff Dyronnet Kador asserts Deaughn's claims on behalf of her minor child, D.W., the biological daughter of Deaughn. Because a child of the decedent precedes parents and siblings in the categories of survivors, only she may assert claims on behalf of Deaughn, and she has done so.
[92] *Id.* at ¶ 7.

the stop."[93]  Defendants rely on *Lionel v. Turner* wherein the Fifth Circuit upheld a district court's finding that the officer who handcuffed and detained the plaintiff in the back of a police car for two hours after she witnessed the police shoot and kill her father was entitled to qualified immunity."[94]

Plaintiffs respond, arguing that the officers fired into their residence and intruded into their home without a warrant, and the Fifth Circuit has held that "[a] warrantless search of a home is presumptively unreasonable," unless an exception to the warrant requirement applies.[95]

Plaintiffs also decry Defendants' claim that firing upon their residence was unreasonable under the circumstances.  Plaintiffs allege that Deputy Guillot and the other officers intruded into their home without a warrant,[96] failed to announce themselves despite numerous requests to do so, and Deputy Guillot fired several shots in the residence where Plaintiffs were present.[97] Thus, they have alleged the violation of a constitutional right. Further, Defendants have not argued that Plaintiffs used or attempted to use any form of violence that would have threatened the officers' safety, and Deputy Guillot fired into their home without a warrant and in the absence of exigent circumstances; thus, Plaintiffs have alleged an excessive force claim and have overcome Deputy Guillot's assertion of the qualified immunity defense.

---

[93] *United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999)(citing *United States v. Hensley*, 469 U.S. 221, 235 (1985)).
[94] 874 F.3d 833 (5th Cir. 2017).
[95] *Carrol v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[96] Plaintiffs note that Defendants attached a warrant to their brief, but the warrant was signed on January 9, 2022 at 1:43 am, and the incident occurred the day before, on January 8, 2022 at approximately 3 pm. Plaintiffs further contend the warrant contained an inaccurate apartment number.  *See* Rec. Doc. 91, pp. 8-9.
[97] Rec. Doc. 76, ¶¶ 28-31.

Defendants respond, arguing that Plaintiffs have not specifically alleged Deputy Guillot's personal involvement in the incident; rather, Plaintiffs have referred to all officers collectively as "Defendants" and have offered only conclusory allegations. Defendants also argue they were not at the residence to execute a warrant; rather, they were investigating a possible kidnapping, and they approached the resident to conduct a "knock-and-talk."

Defendants also argue Plaintiffs fail to allege facts to support their assertion that they suffered severe psychological and emotional injuries.  Defendants further argue that, based on the circumstances, ordering Plaintiffs to exit their home at gunpoint was not unreasonable because "[p]olice officers may 'take such steps as [a]re reasonably necessary to protect their personal safety and maintain the status quo during the course of the stop.'"[98]

Defendants highlight Plaintiffs' allegations that, at the time law enforcement approached their residence,  Deaughn was at the door, Willis was resting in bed, Wilson was cooking in the kitchen, and S'Rhen was also in bed.  Thus, Defendants argue Plaintiffs' allegations demonstrate that they were not in the room with Deaughn and were not in the line of fire.[99]  Defendants cite Fifth Circuit jurisprudence holding that "witnessing the use of force is not enough"[100]; "[b]ystander excessive force claims can only succeed when the officer directs the force toward the bystander – that is to say, when the bystander is not really a bystander."[101]

Finally, Defendants maintain "Plaintiffs [have] conveniently omitted any factual

---

[98] Rec. Doc. 93, p. 4 (quoting *United States v. Campbell*, 178 F.3d 345, 348-49 (5th Cir. 1999)(citing *United States v. Hensley*, 469 U.S. 221, 235 (1985))).
[99] Rec. Doc. 76, ¶ 27.
[100] *Crane v. City of Arlington*, 50 F.4th 453, 468 (5th Cir. 2022).
[101] *Harmon v. City of Arlington*, 16 F.4th 1159, 1168 (5th Cir. 2021).

allegations in their Amended Complaint regarding Deaughn Willis' actions which contributed to the shooting;" thus, "it is clear" that the police officers were investigating a kidnapping, and due to the shooting, "the scene needed to be secured."[102]

The Court turns to its analysis of the excessive force claims.

<u>Collective Pleadings against "Doe" Officers</u>

The Court finds that dismissal of the Jane and John Doe officers is warranted. In *Navejas v. Jaso*, the court explained how the Fifth Circuit's treatment of this type of collective pleading has evolved.

> At one time, the Fifth Circuit countenanced "a careful procedure," whereby a district court could "defer its qualified immunity ruling if further factual development [was] necessary to ascertain the availability of that defense." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)). Under that line of cases, courts approached motion-to-dismiss-stage assertions of qualified immunity from unparticularized allegations of unconstitutional conduct against multiple officers in two steps. *See Sinegal v. City of El Paso*, 414 F. Supp. 3d 995, 1004 (W.D. Tex. 2019) (collecting cases). First, they "determin[ed] whether the alleged actions—regardless of which defendant took them—would state a claim for a constitutional violation." *Id.* (first citing *Dyer v. City of Mesquite*, No. 15-cv-2638, 2017 WL 118811, at *3–4 (N.D. Tex. Jan. 12, 2017); and then citing *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 854–60 (S.D. Tex. 2014)). Second, if the plaintiff had plausibly alleged that unconstitutional acts had been done by some officer, courts authorized narrow discovery tailored to ascertaining which defendant did what. *Id.* at 1004–05 (citing *Khansari*, 14 F. Supp. 3d at 861).

> In 2022, the Fifth Circuit held that this and similar procedures had been abrogated by an intervening Supreme Court decision. *See Carswell*, 54 F.4th at 312 ("[W]here the pleadings are insufficient to overcome [qualified immunity], the district court must grant the motion to dismiss without the benefit of pre-dismissal discovery."). The Court is sympathetic to the notion that "a § 1983 plaintiff who alleges mistreatment at the hands of a group of officers may not yet be able to describe with particularity the actions taken by each of them individually." *Sinegal*, 414 F. Supp. 3d at 1004 (citations omitted). Such considerations are particularly apt here, where Mr. Navejas, who appears to be the only person other than the Officers who could give a first-hand account of what happened, has died. Nevertheless, **even where**

---

[102] Rec. Doc. 93, p. 5.

it is "**unclear exactly [which officer] was responsible for each decision**," a "**plaintiff must [ultimately show] that each Government-official defendant, through the official's own individual actions, has violated the Constitution**." *Cope*, 3 F.4th at 207 n.7 (citing *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937). And at the motion-to-dismiss stage, the plaintiff must plausibly allege as much. *See Carswell*, 54 F.4th at 312.[103]

Accordingly, the Court finds that, to the extent any claims against the Jane and John Doe officers have not been abandoned, the claims against them must be dismissed under this Supreme Court and Fifth Circuit jurisprudence.

The Court, however, finds that the personal involvement of Deputy Guillot is sufficiently pled by Plaintiffs as to their excessive force and unlawful arrest claims. They allege that Deputy Guillot shot through their living room door into the residence,[104] and they specifically allege that Deputy Guillot held them at gunpoint, ordered them out of their home, and detained them in police vehicles.[105]

Psychological Harm/Bystander Claims

Defendants urge dismissal of Plaintiffs' excessive force claims, arguing that they have alleged no physical injury and only psychological harm not related to their own detention but "as a result of witnessing Deaghn Willis being shot at by Deputy Eno Guillot."[106] Plaintiffs challenge these arguments, stating that the Deputy Guillot's firing into the residence they occupied constituted excessive force upon them, not just Deaughn,[107] and being held at gunpoint while it was clear they posed no threat also constituted excessive force upon them.[108] Plaintiffs also contend they have suffered extreme mental

---

[103] 700 F.Supp.3d 532, 537 (W.D. Tex. 2023).
[104] Rec. Doc. 76, ¶ 33.
[105] *Id.* at ¶ 38.
[106] Rec. Doc. 86-1, p. 17 (quoting Rec. Doc. 76, ¶ 33).
[107] Rec. Doc. 76, ¶¶ 28-31; 33.
[108] Rec. Doc. 91, pp. 2-3; Rec. Doc. 76, ¶ 38

anguish, difficulty sleeping, nightmares, and they are now "nervous and afraid" as citizens of Baton Rouge based on this encounter with law enforcement.[109]

In *Singleton v. Casanova*, the Fifth Circuit recently affirmed a district court's denial of qualified immunity to an officer accused of using excessive force when, without warning, he opened fire into the living room of a private residence wherein three individuals were visiting and listening to music.[110] Purportedly conducting a knock and talk investigation of an assault reported just minutes before, the officers approached the home, allegedly known as a "drug house."[111] The officers knocked on the door, and when it was opened, they entered without announcing themselves and with their flashlights trained on the room. The plaintiffs alleged they could not see that the officers were law enforcement because they were blinded by the flashlights.[112] As one man began to approach the door and questioned who was there, Casanova ordered him to show his hands and simultaneously fired two shots. The bullets struck and killed this man, grazed another man, and a bullet "continued past Singleton's head (who still sat on the sofa) before becoming lodged in the wall behind her."[113]

Singleton alleged that Casanova intentionally used excessive force by firing into the living room; Casanova countered that Singleton had no claim because she was not the target of direct police action.[114] The Fifth Circuit noted that Singleton's allegations were sufficient to state a claim for excessive force against her:

> That Singleton's claimed injuries are merely psychological is immaterial. "Psychological injuries may sustain a Fourth Amendment claim." *Flores*, 381

---

[109] Rec. Doc. 76, ¶ 37.
[110] *Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900 (5th Cir. June 10, 2024).
[111] *Id.* at *1.
[112] *Id.* at *2-3.
[113] *Id.* at *3.
[114] *Id.* at *16.

F.3d at 398. Furthermore, Singleton's Fourth Amendment claim, as pled, is not premised on her having seen her friends shot. *See Harmon*, 16 F.4th at 1168 ("no constitutional right to be free from witnessing ... police action" exists (quoting *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985))). Rather, Singleton maintains that she too was the object of direct police action, not a mere bystander, and only narrowly, and fortuitously, escaped physical contact with Casanova's bullets.[115]

In *Singleton*, the Fifth Circuit cited to its previous decision in *Harmon v. City of Arlington, TX*, wherein it explained the distinction between being a bystander to excessive force and being the target of excessive force.[116] The Fifth Circuit held that the plaintiff's "bystander theory fails because 'there is no constitutional right to be free from witnessing ... police action.'"[117] The court continued:

> Bystander excessive force claims can only succeed when the officer directs the force toward the bystander—that is to say, when the bystander is not really a bystander. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986). In *Coon*, for instance, a police officer allegedly fired heavy buckshot into a trailer home while trying to apprehend its owner. *Id.* at 1159-60. Coon's four-year-old daughter was in the trailer when the police officer shot. *Id.* at 1160. Coon's wife, on the other hand, watched from behind the firing line. *Id.* at 1161. Coon's wife and daughter brought § 1983 claims against the police officer, arguing that he violated their Fourth Amendment rights. *Id.* at 1160. This court rejected the wife's claim, but because the daughter was in the trailer and thus subject to the officer's gunfire, the court allowed the daughter's claim to proceed. *Id.* at 1160-61. Indeed, the court noted, "[t]here was no evidence that any act of the deputies was directed towards" the wife. Id. at 1161. In this case, Harmon does not allege that Tran fired indiscriminately into the car. Rather, he alleges that Tran "stuck his gun through the passenger window—mere inches away from the face of Harmon—and fired." Like Coon's wife, he was not within the purview Tran's gunfire. Thus, Harmon's bystander theory fails.[118]

Notably, the *Harmon* court cited its prior decision in *Coon v. Ledbetter*, where the officer fired into a trailer wherein the target's four-year-old daughter was present, while the

---

[115] *Id.* at *16, n. 21.
[116] 16 F.4th 1159 (5th Cir. 2021).
[117] *Id.* at 1168 (quoting *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985)).
[118] *Id.*

target's wife stood outside watching the scene.  The court held that the daughter's claims for excessive force survived because she was "subject to the officer's gunfire."[119]

The Court finds that Plaintiffs have stated a claim for excessive use of force upon them when Deputy Guillot fired multiple shots into the door of the residence.  Plaintiffs pled that, at the time law enforcement approached their residence and banged harshly on the door, Willis was in bed resting, Wilson was cooking in the kitchen, S'Rhen was also resting in bed, and Jordan was also home.[120]  Plaintiffs further pled that, based on the neighbor's ring camera video, the [o]fficers could hear the occupants on the inside asking them to announce themselves."[121]  Plaintiffs allege that Willis, when no response came from the officers, called 911 to seek police assistance for what she believed was an attempted break in.[122]  They also allege that they each witnessed "Deaghn Willis being shot at by Deptuy Eno Guillot."[123] Considering that Plaintiffs have alleged that they all witnessed Deaughn being shot by Deputy Guillot, which the Court must accept as true, they have plausibly alleged that they were subject to Deputy Guillot's gunfire. These allegations allow for the inference that each Plaintiff moved to the living room during the encounter since they witnessed Deaughn being shot.  Thus, the Court finds that Plaintiffs have sufficiently pled that they were subjected to excessive force by Deputy Guillot resulting in their alleged severe psychological harm.

<u>Held at Gunpoint</u>

Defendants also contend that it was reasonable for the officers to hold Plaintiffs at

---

[119] *Id.* (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986)).
[120] Rec. Doc. 76, ¶ 27.
[121] *Id.* at ¶ 28.
[122] *Id.* at ¶ 29.
[123] *Id.* at ¶ 33.

gunpoint under the circumstances while they assessed the scene and investigated whether there was a threat to their safety. Plaintiffs do not dispute the law but claim that the officers belabored holding them at gunpoint long after the scene was secure and without any reason to believe that any of them were dangerous.

In *Bagley v. Guillen*, the Fifth Circuit affirmed the district court's denial of qualified immunity on summary judgment to police officers who allegedly used excessive force on the plaintiff (Bagley) after a traffic stop.[124] Despite Bagley getting out of the car as instructed, the officer continued to point a taser at him and then tasered him when claimed he posed no threat and was cooperating. The court stated:

> We agree with the district court that Bagley has presented sufficient evidence of excessive force to defeat qualified immunity at the summary judgment stage. At the time of the conduct in question, it was clearly established that **an officer may not use force on a suspect who is complying with his commands**. *See, e.g., Darden v. City of Fort Worth*, 880 F.3d 722, 728–30 (5th Cir. 2018); *Newman v. Guedry*, 703 F.3d 757, 761–64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance") (internal quotation mark omitted); *see also Joseph*, 981 F.3d at 342 ("Officers engage in excessive force when they physically strike a suspect who is not resisting arrest."). As we have long held, "[c]laims of excessive force are fact-intensive" and "depend[ ] on the facts and circumstances of each particular case." *Newman*, 703 F.3d at 761. "[R]elevant considerations include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight." *Id*. (cleaned up).
>
> Naturally, officers may use force in ways "that corresponded to [a suspect's] escalating verbal and physical resistance." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). But where a suspect initially resists, force "must be reduced once [he] has been subdued." *Joseph*, 981 F.3d at 335. Once a suspect is "subdued" and "no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). *See also Joseph*, 981 F.3d at 341 ("continuing to inflict force despite [a suspect] committing no crime, posing no threat, and giving no active resistance" violates clearly established law); *Newman*, 703 F.3d at 764 n.8 (officer "should have known that he could not continue to shock the

---

[124] 90 F. 4th 799 (5th Cir. 2024).

suspect with the taser after he was no longer resisting arrest") (cleaned up). **An officer cannot use force against a citizen who has "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command.**" *Newman*, 703 F.3d at 762, 764.[125]

The Fifth Circuit has also explained that "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."[126] Because force must be proportionate to the perceived threat, the continued use of force becomes unreasonable when that threat ceases to exist.[127] In *Pigott v. Gintz*, the Fifth Circuit addressed claims that a police officer continued to brandish his firearm in a threatening manner although the plaintiffs were compliant.[128] The court stated that, "despite the Pigotts' overall compliance and lack of resistance, Deputy Gintz never holstered his firearm until after Deputy Lacaze arrived. According to the Pigotts, Deputy Gintz instead opted to escalate the situation by continuing to brandish his firearm in a threatening manner, pointing it at the children and pressing it against the back of Mr. Pigott's head."[129] The court emphasized that "the district court's ruling failed to consider all of the relevant facts, including that the Pigotts were compliant and not actively resisting or attempting to flee" thus ignoring "precedent that an officer may not use force—non-deadly or otherwise—on a person who is complying with the officer's commands, is not otherwise resisting, and poses no threat to the safety of others."[130] The court held that

---

[125] *Id*. at 803 (emphasis added).

[126] *Lytle v. Bexar County*, 560 F.3d 404, 413 (5th Cir. 2009); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 181–82 (5th Cir. 2021) ("[A] use of force that may begin as reasonably necessary in order to obtain compliance may cease to be so as a suspect becomes more compliant."); *Joseph*, 981 F.3d at 335 ("Force must be reduced once a suspect has been subdued.").

[127] *See Tucker*, 998 F.3d at 181–82; *Lytle*, 560 F.3d at 413.

[128] 2024 WL 5087911 (5th Cir. Dec. 12, 2024)

[129] *Id*. at *7 (citing *Lytle*, 560 F.3d at 413; Joseph, 981 F.3d at 335; *see also Doss v. Helpenstell*, 626 F. App'x 453, 459–60 (5th Cir. 2015) (holding that an officer should receive no qualified immunity if he "quickly escalate[s]" an encounter with a nonthreatening, passively resisting driver who poses little risk of escape by employing overwhelming force "rather than continu[ing] to negotiate")).

[130] *Id*. (citing *e.g., Ramirez v. Killian*, 113 F.4th 415, 424–25 (5th Cir. 2024) ("An officer may not constitutionally use force on a non-threatening subject offering no resistance or merely 'passive'

just because the deputy "did not actually resort to the use of physical or deadly force does not alter this analysis. **Drawing a gun constitutes use of force**."[131]  The court cited its previous decision in *Petta v. Rivera*, where the Fifth Circuit held: "A police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 [excessive force] claim against him."[132]

Applying the foregoing jurisprudence, the Court finds that Plaintiffs have successfully stated a claim for excessive force because they allege that Deputy Guillot "held them at gunpoint" while they were compliant and posed no threat.[133]

### Objective Reasonableness of Deputy Guillot's conduct

It is axiomatic that, at the time of this incident, the law was clearly established that persons in their homes are protected under the Fourth Amendment and Louisiana law from warrantless entry into their homes without probable cause and free from the use of excessive force.[134]  The primary focus in determining whether the alleged use of force was excessive and/or whether Deputy Guillot is entitled to qualified immunity is the objective

---

resistance."); *Bagley*, 90 F.4th at 803 (collecting cases to support holding that, as of May 2019, "it was clearly established that an officer may not use force on a [person] who is complying with his commands"); *Joseph*, 981 F.3d at 341 (holding that "continuing to inflict force despite [a suspect's] committing no crime, posing no threat, and giving no active resistance" violates clearly established law); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) (holding that once a suspect is "subdued" and is "no longer resisting, an officer's subsequent use of force is excessive"); *Newman v. Guedry*, 703 F.3d 757, 761–64 (5th Cir. 2012) (holding that it was objectively unreasonable for an officer to use force when the suspect "committed no crime, posed no threat to anyone's safety, and did not resist the officers or fail to comply with a command")).
[131] *Id.* at *8 (citing *See Smith v. Heap*, 31 F.4th 905, 912 & n.7 (5th Cir. 2022) (noting that officers "approach[ing] a vehicle with weapons drawn" is a "use of force" and citing authority discussing same); *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998) ("A police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause physical injury, but he has certainly laid the building blocks for a section 1983 [excessive force] claim against him." (quoting *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986))))(emphasis added).
[132] 143 F.3d 895, 905 (5th Cir. 1998) (quoting *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986)).
[133] Rec. Doc. 76, ¶¶ 34, 38.
[134] U.S.C.A. Const. Amend. IV; LSA-Const. Art. 1 § 5; *Smith v. Lee*, 73 F. 4th 376 (5th Cir. 2023); *Graham v. Connor*, 490 U.S. 386 (1989).

reasonableness of the force.

Defendants claim they were at the Willis residence to perform a "knock and talk," and Deaughn created the exigent circumstances by possessing a gun. Defendants criticize Plaintiffs for "conveniently omit[ing]" these facts from their Amended Complaint. The Defendants made the same argument in the consolidated case, and the Court rejected it. Plaintiffs' allegations go beyond conclusions; Plaintiffs assert that Guillot and the officers acted without a warrant and without probable cause. Plaintiffs supported this alleged fact with allegations that the officers approached their residence in a "hostile" manner by Deputy Guillot pointing his sniper rifle at the door, the officers' persistent refusal to announce themselves, and the officers positioning themselves beyond the view of the peephole.[135]

Defendants' argument that Plaintiffs' claims should be dismissed because they failed to plead any facts relating to Deaughn's conduct, particularly that he possessed a gun, is "unavailing" according to the Fifth Circuit's recent decision in *Lewis v. Inocencio*, wherein the court stated:

> [T]he officers argue that the conclusions that Lockett posed no threat to anyone and that the officers fired without cause are improper interpretations of Lewis's allegations. The officers contend that Lewis's actual allegation— that Lockett was sitting in his parked vehicle when officers began firing—is insufficient on its own to give rise to such inferences. **According to the officers, Lewis was required to plead additional facts, such as whether Lockett's hands were in plain sight. This argument is unavailing.** Even when a defendant puts forth a qualified-immunity defense, the pleading standard is not heightened. *Allen*, 65 F.4th at 743. At this stage, Lewis has satisfied her burden to plead facts that "if proved, would defeat [the] claim of immunity." *Guerra*, 82 F.4th at 285 (alteration in original) (quoting *Waller*, 922 F.3d at 599). The factual "allegations need 'not conclusively establish' the plaintiffs' theory of the case." *Waller*, 922 F.3d at 600 (quoting *Doe v. Robertson*, 751 F.3d 383, 389 (5th Cir. 2014)). "For now, it suffices that"

---

[135] Rec. Doc. 76, ¶¶ 25, 26, 28.

Lewis's allegations "are not 'naked assertions devoid of further factual enhancement.'" *Id*.[136]

Plaintiffs have also successfully pled facts that undermine the reasonableness of the "knock and talk" investigation utilized by law enforcement in this encounter. "Under the Fourth Amendment, a warrantless search of a person's home is presumptively unreasonable, and it is the government's burden to bring the search within an exception to the warrant requirement."[137] "Exigent circumstances is such an exception."[138] The application of the exigent-circumstances exception is considered on a case-by-case basis.[139] "It is available only on a showing by the government that the officers' entry into the home was supported by probable cause and justified by an exigent circumstance."[140] "[N]o amount of probable cause can justify a warrantless search or seizure absent [such] exigent circumstances."[141] "In other words, even if the officers had probable cause to search the ... home, they had to have exigent circumstances to enter without a warrant."[142]

Relevant here, the Fifth Circuit instructs that, to determine the presence of exigent circumstances, courts must consider "the degree of urgency involved and the amount of time necessary to obtain a warrant," and "the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought."[143]   Even where an exigency exists, the court must determine whether law enforcement created the exigency.[144] "In assessing whether the officers created the exigency, we focus on the

---

[136] No. 23-20098, 2024 WL 229274, at *3 (5th Cir. Jan. 22, 2024)(emphasis added).
[137] *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980); United States v. Gomez–Moreno, 479 F.3d 350, 354 (5th Cir. 2007)).
[138] *Id*.
[139] *Lange v. California*, 594 U.S. 295 (2021); *Birchfield v. North Dakota*, 579 U.S. 438 (2016).
[140] *Aguirre*, 664 F.3d at 610 (citing *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001)).
[141] *Id*. (quoting *Horton v. California*, 496 U.S. 128, 137 n.7 (1990)).
[142] *Id*.
[143] *Id*. at 611 (quoting *United States v. Mata*, 517 F.3d 279, 287 (5th Cir. 2008)).
[144] *United States v. Daniels*, 930 F.3d 393, 401 (5th Cir. 2019)(citing *King*, 563 U.S. at 461, 131 S.Ct. 1849)).

'reasonableness of the officers' investigative tactics leading up to the warrantless entry.'"[145]

The Court must accept Plaintiffs' allegations as true. As stated above, Plaintiffs alleged that law enforcement refused to identify themselves, despite being asked repeatedly who was at the door; they intentionally concealed their identities by positioning themselves outside the view of the apartment door's peephole; and they banged aggressively on the door with Guillot's sniper drawn, and Plaintiffs claim these allegations are confirmed by the neighbor's ring camera video.[146]

Cognizant of the Supreme Court's instruction that the gravity of the underlying offense giving rise to the warrantless home entry is relevant to the inquiry,[147] the officers' alleged conduct during the "knock and talk" does not comport with the alleged purpose for the visit. Further, because it is alleged that Deputy Guillot began shooting unprovoked as Deaghn was closing the door,[148] Plaintiffs' allegations sufficiently raise a question regarding both whether an exigency existed, and if so, whether this exigency was created by the officers. The Court notes that, even if Deaghn had a firearm, which the Court cannot assume at this stage, the Fifth Circuit has consistently held that the presence of a firearm alone does not create an exigency without reason to believe that a suspect is aware of police surveillance.[149]

Defendants' reference to contradicting evidence relates to factual disputes more appropriately resolved at the summary judgment or trial stages, not within the context of

---

[145] *Jones*, 239 F.3d at 720 (quoting *Blount*, 123 F.3d at 838).
[146] Rec. Doc.. 76, ¶ 28.
[147] *Lange v. California*, 594 U.S. 295 (citing *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984)).
[148] Rec. Doc. 76, ¶ 53.
[149] *Jones*, 239 F.3d at 720.

their Motion to Dismiss.  The question before the Court is not whether Plaintiff will prevail at trial. Rather, the key issue is whether the operative complaint (1) on its face (2) contains enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim.[150]

In sum, viewing the factual allegations of the amended Complaint in the light most favorable to Plaintiffs and considering the totality of the circumstances, Plaintiff has sufficiently stated a claim against Deputy Guillot for violation of their Fourth Amendment right to be free from excessive force.  The Court also finds that every reasonable officer in Deputy Guillot's position would have known, beyond doubt, that intentionally firing into the closed front door of a residence where there is no determination that an immediate threat to officer safety was present was objectively unreasonable under clearly established law. Thus, Plaintiffs have sufficiently alleged a constitutional violation to support their § 1983 and state law excessive force claims against Deputy Guillot to withstand dismissal based on the qualified immunity defense.

### E.    Unlawful Seizure/False Arrest

Under Louisiana law, false arrest and imprisonment occur when one arrests and restrains another against their will without a warrant or other statutory authority.[151] Additionally, "Louisiana applies the same standards to analyze claims of false arrest … as the standards utilized under federal law."[152]

---

[150] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)(cleaned up).

[151] *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009); *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 514 (M.D. La. 2013)(citing *Kyle v. City of New Orleans*, 353 So.2d 969, 971 (La.1977)).

[152] *Sanders v. CEOC LLC*, 586 F.Supp.3d 519, 527 (citing *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997), *rehearing denied* 146 F.3d 282, *cert. denied*, 525 U.S. 1054, 119 S.Ct. 618, 142 L.Ed.2d 557 (1998)).

Considering the facts alleged, the Court must determine if Plaintiffs' allegations fit squarely within false arrest or some alternative type of unreasonable detention/seizure. The Fourth Amendment prohibits only "unreasonable ... seizures."[153] "The extent of [the Fourth Amendment's] constitutional protection varies with the type of seizure at issue."[154] In *Zinter v. Salvaggio*, the court explained:

> First are "arrests," which must be supported by probable cause. *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (citing *United States v. Zukas*, 843 F.2d 179, 181–82 (5th Cir. 1988)). Next are "detentions," which are "brief seizure[s] that must be supported by reasonable suspicion." *Id.* (quoting *Zukas*, 843 F.2d at 181). Last are "investigatory, suspicionless seizure[s]," which require a court to weigh the public's concern and interest against the interference with individual liberty. *Lincoln v. Scott*, 887 F.3d 190, 196 (5th Cir. 2018) (citing *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)).[155]

In *Elphage v. Gautreaux*, this Court noted that "[t]he Louisiana Supreme Court has held that a 'valid investigatory stop' that falls short of an arrest precludes liability for false arrest under Louisiana law."[156] In *Elphage*, the plaintiffs claimed the individual "was placed into a police car in handcuffs, but was eventually released without an arrest after it was realized that a mistake(s) had been made."[157] Thus, his claim would be "analyzed through the Fourth Amendment standards for unlawful detention as opposed to unlawful arrest."[158]

In *Lincoln v. Turner*, a case decided in 2017, the Fifth Circuit held that the Fourth Amendment's reasonableness requirement applies to the detention of potential witnesses,

---

[153] U.S. Const. amend. IV; *Lincoln v. Turner*, 874 F.3d 833, 840 (5th Cir. 2017).

[154] *Lincoln v. Turner*, 874 F.3d at 942.

[155] 610 F.Supp.3d 919, 942 (W.D. Tex. 2022).

[156] *Elphage*, 969 F.Supp.2d at 515 (citing *Harrison v. State Through Dept. of Pub. Safety and Corr.*, 721 So.2d 458, 462–63 (La.1998); *see also O'Dwyer v. Nelson*, 310 Fed.Appx. 741, 745 n. 4 (5th Cir.2009) (citing Harrison for the proposition that "Fourth Amendment principles underpin Louisiana law relating to false arrests" and discussing federal and state law claims for false arrest in conjunction)).

[157] *Id.* at 502 (citation omitted).

[158] *Id.* (citing *United States v. Campbell*, 178 F.3d 345, 349 (5th Cir.1999) ("[D]rawn guns and handcuffs do not necessarily convert a detention into an arrest.")).

even for brief periods.[159]  The Court found that a witness who was handcuffed and placed in the back of a police car for approximately two hours sufficiently pled an unreasonable seizure that "may rise to the level of a *de facto* arrest that must be supported by probable cause."[160]  However, the court determined that the officers were entitled to qualified immunity on the basis that the plaintiff did not show "that the contours of the right were so clearly established that 'a reasonable official would understand that what he is doing violates that right.'"[161]  The court supported this finding as follows:

> Finally, we note that there may well be an emerging trend toward holding it unreasonable to detain a police shooting witness for an extended period of time, absent either reasonable suspicion or probable cause to believe that a crime has been committed.[162] While we may look to other circuits to find clearly established law, we must consider "the overall weight" of such authority.[163] A "trend" alone is just that. As of December 2013, only two circuits had weighed in on the "contours of the right." These cases alone do not provide sufficient authority to find that the law was clearly established.[164]

One year later in 2018, relying on *Lincoln v. Turner*, the Fifth Circuit addressed similar claims in *Lincoln v. Scott*.[165]  In *Scott*, a witness, who was present when police officers shot and killed her father during a standoff, asserted that her constitutional rights were violated when the officers unlawfully detained her following the shooting.[166] The court noted that "SWAT officers had to physically remove Erin from her father's side to secure the scene and provide John medical attention. When the officers removed Erin, she was

---

[159] 874 F.3d 833 (5th Cir. 2017).
[160] *Id.* at 841.
[161] *Id.* at 850 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Plaintiffs represent in their opposition memorandum that the Fifth Circuit held that the plaintiff in this case alleged enough facts to overcome qualified immunity (Rec. Doc. 91, p. 13).  This is clearly erroneous.
[162] *Id.* (citing *Walker*, 451 F.3d at 1151; *Maxwell*, 708 F.3d at 1084).
[163] *Id.* (citing *Melear v. Spears*, 862 F.2d 1177, 1184 n.8 (5th Cir. 1989) ("Relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formalistic, but they will loom large in our inquiries.")).
[164] *Id.*
[165] 887 F.3d 190 (5th Cir. 2018).
[166] *Id.*

handcuffed, taken through the back exit of the house, and placed in the back seat of a CPD officer car."[167] Erin alleged that her rights were violated when she "was physically removed from the scene, placed in a cop car, and—although never told she had to stay there—felt that she was not free to leave."[168]  The court found that, "[a]t a minimum, Erin's seizure was an investigatory, suspicionless seizure, triggering a Fourth Amendment reasonableness analysis."[169]

The court acknowledged that "it may have been reasonable 'to detain Erin for some amount of time to determine her role in the situation[,]" the officers "exceeded this authority when [they] ... detained her in the back of a police car for two hours."[170] Additionally, these officers "extended the seizure through the time Erin was interviewed at the CPD station— a total of roughly four hours."[171]  Finding that Erin stated a claim, the court concluded "[i]t may have been reasonable for the officers to remove her from the scene given her proximity, but it does not necessarily follow that they had unbound authority to hold her for roughly four hours, notably without probable cause.[172] 'In doing so, [they] violated Erin's constitutional rights.'"[173] However, once again, the Fifth Circuit found that the officers were entitled to qualified immunity because the law was not clearly established.[174] In upholding the district court's grant of qualified immunity, the Fifth Circuit concluded:

> The intricate facts here—reasonableness of detaining a sole, compliant witness to a police shooting—have never been directly addressed or clearly established by this Circuit or the Supreme Court. *See Turner*, 874 F.3d at 849. The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so

---

[167] *Id.* at 193.
[168] *Id.* at 196.
[169] *Id.* (citing *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)).
[170] *Id.* at 197 (quoting *Lincoln v. Turner*, 874 F.3d at 849).
[171] *Id.*
[172] *Id.* (citing *Maxwell*, 708 F.3d at 1083).
[173] *Id.* (quoting *Turner*, 874 F.3d at 849; *see also Walker*, 451 F.3d at 1149).
[174] *Id.*

avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S.Ct. at 590 (quoting *Plumhoff v. Rickard*, ––– U.S. –––, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014)) (emphasis added). Our inability to point to a string of cases establishing "settled law" that these facts amount to a Fourth Amendment violation demonstrates that the violated right was not so clearly established that these officers can be liable. *See id.*[175]

In 2022, the same year the incident in this case occurred, the Western District of Texas addressed similar claims in *Zinter*. There, the court found that the plaintiffs carried their burden of demonstrating they were unconstitutionally seized and *de facto* arrested.[176] However, the court also held that the police officers were entitled to qualified immunity because, at the time of the constitutional violations, "Fifth Circuit case law had not clearly established that [the plaintiff's] seizure – for 30-45 minutes, with  handcuffs removed at some point – violated the Fourth Amendment."[177]

The Court finds that, based on the foregoing jurisprudence, the facts alleged describe something between an investigatory, suspicionless seizure and a detention that, prolonged, could be considered a *de facto* arrest, at least for Willis who was handcuffed. And, based on the facts alleged, the court finds that Plaintiffs have sufficiently pled a Fourth Amendment constitutional violation based on their seizure/detention.  However, once the defense of qualified immunity is raised, "a plaintiff has the burden to rebut the qualified immunity defense … We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."[178] Plaintiffs made no effort to address this requirement; rather, Plaintiffs erroneously stated

---

[175] *Id.* at 198.

[176] *Zinter*, 610 F.Supp.3d at 942.

[177] *Id.* at 947.

[178] *Kelly v. Stassi*, 587 F.Supp.3d 409, 425 (M.D. La. 2022)(quoting *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)).

that Fifth Circuit caselaw supported the denial of qualified immunity when it clearly ruled otherwise based on the lack of clearly established law.[179]  Further, the Court did not find a "robust consensus of persuasive authority" such that the denial of qualified immunity on this issue would be warranted.  Accordingly, Plaintiffs' unlawful seizure/detention/arrest claims are dismissed based on qualified immunity.

### F.    Assault and Battery

The Fifth Circuit has stated that "Louisiana's excessive force tort mirrors its federal constitutional counterpart."[180] "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force."[181] Because Plaintiffs' assault, battery, and excessive force claims are essentially state law corollaries of the § 1983 claims for excessive force, the foregoing analysis of Plaintiff's § 1983 excessive force claims against Deputy Guillot in his individual capacity also applies to Plaintiff's state law claims for excessive force, assault, and battery. Accordingly, Defendants' motion as to these claims against Deputy Guillot is denied.

### G.    Negligence

Louisiana utilizes the duty/risk analysis to evaluate negligence claims.[182] "The duty/risk analysis consists of the following factors: (1) did the defendant owe a duty to the plaintiff; (2) was the duty breached; (3) was the conduct in question a substantial factor in

---

[179] Rec. Doc. 91, p. 13.

[180] *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citing *Deville v. Marcantel*, 567 F.3d 156, 172–73 (5th Cir. 2009)).

[181] *Id*. at 515 (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. App. 5 Cir. 1982)); *see also Taylor v. United States*, 1991 WL 280066 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest.").

[182] *Causer v. Ard*, 2019 WL 3849155, at *7 (M.D. La. Aug. 15, 2019).

bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred; (4) was the risk, and harm caused, within the scope of protection afforded by the duty breached; and (5) actual damage."[183]  Additionally, "under Louisiana law, a police officer has a duty to act reasonably under the totality of the circumstances."[184]

Defendants argue that, because Deputy Guillot acted reasonably under the circumstances, Plaintiffs have not stated a claim for negligence under Louisiana law. Plaintiffs oppose this motion, arguing that they have presented allegations showing that Deputy Guillot's conduct was not reasonable, and they have adequately pled the elements for negligence.

In the Amended Complaint, Plaintiffs allege violations of La. C.C. art. 2315 and 2316, which provide, respectively, that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it[;]" and "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill;" they set forth the foregoing elements for negligence, with the exception of element 4; and they allege facts demonstrating that each element is met.[185] Plaintiffs state that law enforcement has a duty to protect citizens from danger and from violations of their rights.[186]  Plaintiff specifically allege that Deputy Guillot breached his duty "by firing several shots into the residence of the Plaintiff's (sic) while they were inside. He and other officers and deputies breached their duty by failing to act reasonably under the circumstances, by failing to act in accordance with what the law requires ("knock

---

[183] *Id*. (citing *Williams v. Domino's Pizza, Inc*., 2001 WL 6724, at *4 (E.D. La. Jan. 2, 2001); *Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991); *see also Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 698 (5th Cir. 2011)).

[184] *Perron v. Travis*, No. 20-221, 2021 WL 1187077, at *8 (M.D. La. Mar. 29, 2021) (citing *Mathieu v. Imperial Toy Corp*., 94-0952, p. 10 (La. 11/30/94), 646 So. 2d 318, 325).

[185] Rec. Doc. 76, ¶¶ 81-82.

[186] *Id*. at ¶ 83.

and announce").[187]   Plaintiffs allege that Deputy Guillot's breach of his duty "caused Plaintiffs' injuries for which they have accumulated damages."[188]   While Plaintiffs did not allege the scope of protection element, the facts alleged sufficiently satisfy this element as well.

The Court finds that whether Deputy Guillot's conduct was reasonable is a factual dispute that cannot be resolved at the Rule 12(b)(6) stage.   It is enough that Plaintiffs alleged how and why they assert that his conduct was unreasonable. The Court finds that Plaintiff has successfully pled Louisiana negligence claims. Notably, if it is later determined that Deputy Guillot's actions were reasonable under the totality of the circumstances, Plaintiffs' negligence claims will fail; but in testing the sufficiency of the pleadings at this stage, the negligence claims survive dismissal.

### H.    Intentional/Negligent    Infliction    of    Emotional    Distress ("IIED/NIED")/Bystander Claims under La. C.C. art. 2315.6

Defendants move to dismiss Plaintiffs' IIED and NIED claims and argue that Plaintiffs have not asserted a bystander claim under La. C.C. art. 2315.6.   However, as noted above, Plaintiffs specifically assert this claim in paragraph 7 of the First Amended Complaint: "Plaintiffs allege a cause of action pursuant to Louisiana Civil code Article 2315.6 for mental anguish and intentional infliction of emotional distress."

Plaintiffs oppose these motions, arguing that their pleadings adequately state claims for these torts; further, under the IIED claim, Plaintiffs state: "Alternatively, this was a negligent infliction of emotional distress and is recoverable under La. Civ. Code 2315."[189]

---

[187] *Id.*
[188] *Id.*
[189] Rec. Doc. 76, ¶ 80.

<u>Intentional Infliction of Emotional Distress</u>

To maintain an action for IIED in Louisiana, Plaintiff must establish that (1) Defendants' conduct was extreme and outrageous; (2) Plaintiff suffered severe emotional distress; and (3) Defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct.[190] The conduct requirement for IIED is difficult to meet; the standard does not reach "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities;" rather, the behavior must "go beyond all possible bounds of decency, [and must] be regarded as atrocious and utterly intolerable in a civilized community."[191] "Unlike an action grounded in negligence, an action sounding in intentional tort causes us to focus on whether the tortfeasor desired or knew that the harm facing the plaintiff as a result of the complained-of conduct was substantially certain to result from the conduct."[192]

The Court finds that Plaintiffs have failed to adequately plead an IIED claim because they have failed to plead allegations to satisfy the third element that Deputy Guillot desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. Plaintiffs allege facts to support the first two elements:

> Plaintiffs witnessed the brutal murder of their son and brother at the hands of Defendant Eno Guillot. They each watched him die a slow death at the hands of officers who thereafter held each of the Plaintiffs at gunpoint, ordering them, against their wishes, out of their own home, leaving their loved one to die alone. These actions were intentional and certainly inflicted severe emotional distress on each of the Plaintiffs.[193]

---

[190] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).
[191] *Id.*; *see also Iturralde v. Shaw Grp., Inc.*, 512 Fed.Appx. 430, 435 (5th Cir.2013) ("Under Louisiana Civil Code Article 2315, plaintiffs must meet a high burden of proof to prevail on an IIED claim.").
[192] *Bourgeois v. Curry*, 921 So.2d 1001, 1010 (La.App. 4 Cir. 12/14/05).
[193] Rec. Doc. 76, ¶ 80.

Although Plaintiffs state the element that requires intentional or substantially certain acts, Plaintiffs plead in conclusory fashion that "[t]hese actions were intentional …"[194] The Court finds this allegation conclusory and insufficient to sustain a claim for IIED.

Negligent Infliction of Emotional Distress

In Louisiana, a claim for negligent infliction of emotional distress without physical injury is viable under La.Civ.Code art. 2315(A), which provides: "Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." The general negligence duty-risk analysis is utilized in determining whether one may recover under La.Civ.Code art. 2315.[195]

In *Spencer v. Valero Refining Meraux, L.L.C.,*[196] the Louisiana Supreme Court recently explained the requirements for NIED:

> For liability to attach, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). *Mathieu v. Imperial Toy Corp.*, 94-952, pp. 4-5 (La. 11/30/94), 646 So.2d 318, 322.[197]

> [F]or negligent infliction of emotional distress claims absent physical damage/injury, a plaintiff must prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Moresi*, 567 So.2d at 1096. This rule must be "stringently applied" in cases that are inherently speculative in nature. *Bonnette*, 837 So.2d at 1235. The actions of the defendant must constitute negligence. The plaintiff's mental disturbance must be "serious." *Moresi*, 567 So.2d at 1096. Evidence of generalized fear or evidence of mere inconvenience is insufficient. Evidence of medical

---

[194] *Id.*
[195] *Doe v. McKesson*, 21-929, p. 7 (La. 3/25/22), 339 So.3d 524, 531.
[196] 2022-00469 (La. 1/27/23), 356 So.3d 936.
[197] *Id.* at 949.

> treatment is not required, nor is expert medical testimony; however, a plaintiff bears the burden of presenting sufficient evidence of the nature and extent of the mental anguish suffered that was caused by the defendant's conduct. Whether the mental distress is "serious" is a matter of proof. Finally, we reiterate that these guidelines must be applied with the policy considerations discussed herein.[198]

The court then elaborated "on what is not required to be proven by a plaintiff seeking damages for negligent infliction of emotional distress absent physical damage/injury."[199]

The court relaxed some of the requirements originally set forth in *Lejeune*:

> The existence of a special, direct duty owed by the defendant is not required. We also decline to impose a requirement of outrageous conduct on the part of a defendant. A claim for negligent infliction of emotional distress is a claim that, by definition, requires a plaintiff to prove negligence. Further, we expressly reject application of the standard set forth in *Lejeune*, 556 So.2d 559. The emotional distress suffered by a plaintiff need not be "reasonably foreseeable," nor "severe and debilitating." *Lejeune*, 556 So.2d at 571.[200]

The Court finds that Plaintiffs have sufficiently pled claims for NIED. First, the Court incorporates its findings above that Plaintiffs have stated a claim for general negligence under the duty/risk analysis. Further, the very special circumstances of witnessing their son/brother be shot and killed supports that an especial likelihood of genuine and serious mental distress would result such that these claims are not spurious. Defendants' Motion to Dismiss Plaintiffs' NIED claims is denied.

<u>Bystander Claims under La. C.C. art. 2315.6</u>

Under Louisiana Civil Code article 2315.6, certain family members, including parents and siblings, may recover damages for mental anguish or emotional distress if they witness an event causing injury to another person or come upon the scene soon

---

[198] *Id.* at 950.
[199] *Id.*
[200] *Id.*

thereafter. A bystander claim is an independent cause of action.[201]

> To recover under this article, a plaintiff must show that: (1) they viewed the event causing injury to the direct victim or came upon the scene soon after; (2) the direct victim suffered such harm that it can reasonably be expected that the plaintiff would suffer serious mental anguish from the experience; (3) the emotional distress plaintiff sustained is both serious and reasonably foreseeable; and (4) plaintiff and the direct victim have the requisite familial relationship. *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559 (La.1990); *See also* La.Civ.Code art. 2315.6. Additionally, a plaintiff must show that as they witnessed the injury-causing event, or the scene of injury soon after, they were contemporaneously aware that the event had caused harm to the victim. *Trahan*, 728 So.2d 1273.[202]

The Court notes that, as Deaughn's stepfather, Wilson does not fall within the class of persons entitled to recover for the damages available in La. C.C. art. 2315.6. In *Irvin v. Foti*, the court held that, "[t]o be considered a 'mother' or 'father' under the statute, a plaintiff must be the biological or adoptive mother or father of the victim."[203] And in *Daigrepont v. Louisiana State Racing Com'n*, the court held that a stepmother could not recover damages for mental anguish or emotional distress based upon statute giving the cause of action to "the father and mother of the injured person, or either of them;" rather, statute applies only to the birth mother or mother by adoption.[204]  Accordingly, Wilson's bystander claim must be dismissed as a matter of law.

In *Trahan v. McManus*, the Louisiana Supreme Court explained that bystander damages are intended to compensate for the immediate shock of witnessing a traumatic event that caused the direct victim immediate harm that is severe and apparent.[205] The requirement of temporal proximity between the tortious event, the victim's observable

---

[201] *Castille v. Louisiana Medical Mut. Ins. Co.*, 2014-519 (La. App. 3 Cir. 11/15/14), 150 So.3d 614, 619.
[202] *Id.* at 619-20.
[203] No. 99-1526, 1999 WL 504916, at *4 (E.D. La. July 13, 1999).
[204] 663 So.2d 840 (La. App. 4 Cir. 10/26/95), *writ denied*, 666 So.2d 1085 (1996).
[205] 97-1224 (La. 3/2/99), 728 So.2d 1273, 1279.

harm, and the plaintiff's mental distress is crucial.[206]

Accordingly, for the Plaintiffs to have a valid bystander claim under Louisiana Civil Code article 2315.6, they must demonstrate that they were present at the scene of the shooting, or came upon the scene soon thereafter, and were contemporaneously aware that the shooting caused harm to their son/brother. If they did not witness the event or were not aware of the harm at the time, their claim is likely to fail under the statute.

In *Allen v. City of New Orleans*, the 20-year-old decedent was shot and killed by police in his mother's home during the execution of a search warrant.[207]  The decedent's mother, half-siblings, and full sibling brought suit and asserted Article 2315.6 bystander claims. The defendant City of New Orleans moved for summary judgment on the bystander claims, arguing that the plaintiffs could not prove damages "because none of them sought medical treatment or received any type of counseling for their mental injuries."[208]  The City also argued that none of the bystander plaintiffs in the house actually witnessed the shooting of the decedent, which occurred on the stairs.[209]  The court denied summary judgment on the bystanders' claims finding that the City failed to support its arguments with any "legal authority whatsoever" and noted that the claims should be presented to a jury.[210]

In *Smith v. Urban Oil & Gas Group*, the natural father, natural mother, natural sister, and twin brother of the decedent asserted Article 2315.6 bystander claims against the oil company that operated a battery ("the Battery") of tanks connected to nearby oil wells.[211]

---

[206] *Id.*

[207] No. 13-422, 2015 WL 6738529 (E.D. La. Nov. 4, 2015).

[208] *Id.* at *5.

[209] *Id.*

[210] *Id.*

[211] *Smith v. Urban Oil & Gas Group, LLC*, No. 2:21-cv-04402, 2022 WL 1098950 (W.D. La. Apr. 12, 2022).

Plaintiffs alleged their fourteen-year-old son Zalee was on top of an oil tank when it suddenly exploded.[212]  The court applied the foregoing jurisprudence and found that the plaintiffs had sufficiently pled an action for bystander liability based on these allegations: (1) the plaintiffs viewed the explosion that killed Zalee or arrived at the scene soon thereafter; and (2) "they were aware that Zalee was at the Battery when the tank exploded and realized that as soon as they saw that the tank had been blown hundreds of feet away by the explosion, they immediately realized that Zalee had been severely harmed and almost certainly killed."[213]

Applying the foregoing legal principles to the facts alleged, Plaintiffs Willis, S'Rhen, and Jordan have successfully stated a claim for bystander damages under Louisiana law. The allegations plainly state that they each witnessed Deaughn be shot and killed in the living room, and they were forced to sit and watch as he was dying and no medical aid was sought.  While Defendants erroneously claim Plaintiffs did not file a bystander claim, to the extent their Motion to Dismiss the NIED claims overlaps on this issue, the Motion to Dismiss is DENIED.

## I.     Vicarious Liability

Under La. Civ. Code art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment."[214] Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every

---

[212] *Id.* at *1.
[213] *Id.* at *8.
[214] *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000).

other employer."[215] The Louisiana Supreme Court has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[216]

Plaintiffs have alleged that Deputy Guillot was acting in the course and scope of his employment during this incident.[217] Defendants argue that "if the State law claims against Eno Guillot are dismissed, then the claims against Sheriff Gautreaux for vicarious liability should also be dismissed."[218] Because the Court has found that Plaintiffs stated claims against Deputy Guillot for assault, battery, excessive force, bystander liability, negligence, and NIED under Louisiana law, there is a potentially culpable employee for which Sheriff Gautreaux could be held vicariously liable. Accordingly, the Sheriff's motion will be denied as to this claim with respect to the state law claims that remain.

## III.    CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion to Dismiss[219] is **GRANTED IN PART** and **DENIED IN PART.** Defendants' Motion to Dismiss at Rec. Doc. 80 is denied as moot as it is duplicative. Plaintiffs' 42 U.S.C. § 1983 *Monell* claims against the Sheriff, including claims for unconstitutional policies, improper hiring, failure to properly train and supervise, and ratification; § 1983 claims against Deputy Guillot in his official capacity; claims for punitive damages; State law claim for abuse of process; and the State

---

[215] *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009) (citing *Brasseaux*, 752 So. 2d at 815); *see also Bussey v. Dillard Dep't. Stores, Inc.*, 984 So. 2d 781, 784 (La. App. 1 Cir. 2008) ("[V]icarious liability [under art. 2320] applies to law enforcement employers as well." (citations omitted)).
[216] *Brasseaux*, 752 So. 2d at 820 (internal citations omitted).
[217] Rec. Doc. 76, ¶ 91.
[218] Rec. Doc. 86-1, p. 28.
[219] Rec. Doc. 86.

law claim against the Sheriff for negligent hiring, supervision, and training are all dismissed as abandoned.  Plaintiffs' unlawful seizure/detention/arrest claims are dismissed because Deputy Guillot is entitled to qualified immunity on these claims.  All claims asserted against Jane and John Doe officers/deputies are dismissed for failure to state a claim. Plaintiffs' IIED claims are dismissed for failure to state a claim.  Plaintiff Wilson's bystander claim under Louisiana law is dismissed for failure to state a claim.  Defendants' Motion to Dismiss is DENIED as to all other claims asserted.

Plaintiffs are granted to leave to amend their Amended Complaint for the sole purpose of correcting the clerical error regarding Section 2983 claims against Deputy Guillot's in his individual capacity, and they shall amend the Complaint on or before April 16, 2025. Plaintiffs are not permitted to add any new claims, parties, legal theories, or factual allegations.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this  31st  day of March, 2025.

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**